FILED

**PAID**

2020 FEB 21  PM 3: 01

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____EV

1  Pritish Vora

2  27758 Santa Marg. Pkwy, #530

3  Mission Viejo, CA  92691

4  949-292-8359

5  Plaintiff in Pro Per

6

7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                    **SACV 20 - 00366 DOC (KESx)**

12  Pritish Vora,                              Case No.:

13               Plaintiff,                    **Violations of the Fair Credit**

14       vs.                                   **Reporting Act [15 U.S.C. § 1681 et**

15  PNC BANK, N.A.,                            **seq.]**

16               Defendant.

17                                             **JURY TRIAL DEMANDED**

18

19

20  COMES NOW, Plaintiff, Pritish Vora, ("Plaintiff"), by way of Pro Se, files with

21  the Honorable Court his claim for damages against Defendant PNC BANK, N.A.

22  ("PNC") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b),

23  ("FCRA"), all parts and sub-parts that apply, and alleges herein as follows:

24                    **Preliminary Statement**

25       1.    The FCRA was the product of Congressional concern over abuses in

26  the credit reporting industry. *See* Guimond v. Trans Union Credit Information Co.,

27  45 F.3d 1329, 1333 (9th Cir. 1995).

28       2.    The legislative history of the FCRA indicates that is was crafted to

protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner.  "These consumer oriented objectives support a liberal construction of the FCRA."  <u>Guimond</u>, 45 F.3d at 1333, citing <u>Kates v. Croker National Bank</u>, 776 F.2d 1396, 1397 (9th Cir. 1985).

3.     "The threat of punitive damages under § 1681n of the FCRA is the primary factor deterring the erroneous reporting by the credit reporting industry."  <u>See</u> <u>Brim v. Midland Cred. Mgmt.</u>, 795 F.Supp. 2d 1255, 1265 (N.D. Ala. 2011) (citing <u>Yohay v. City of Alexandria Employees Cred. Union</u>, 827 F.2d 967, 972 (4th Cir. 1987)).

4.     The term "actual damages" in § 1681o includes emotional distress and humiliation.   <u>Guimond</u>, 45 F.3d at 1333.   "Neither a denial of credit nor transmission of a credit report to a third party is required for liability."  Id.

5.     "Furnishers" are sources that provide credit information to credit reporting agencies ("CRAs").  <u>See</u> <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1153 (9th Cir. 2009).  See also 12 C.F.R. § 1022.41(c).  Under FCRA, furnishers have the duty to investigate and correct inaccurate information, **and an individual may bring a private cause of action to sue a furnisher for its failure to fulfill those duties**.  15 U.S.C. § 1681s-2(b); <u>Nelson v. Chase Manhattan Mortg. Corp.</u>, 282 F.3d 1057, 1060 (9th Cir. 2002).  (Emphasis added).

## Jurisdiction and Venue

6.     Jurisdiction of this Court arises pursuant to Sec 618 of the FCRA, [15 U.S.C. § 1681p], and pursuant to 28 U.S.C. § 1331.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, the harm to Plaintiff occurred in this District, and Defendant PNC regularly conducts business in this District, and in the State of California, therefore establishing personal jurisdiction.

**COMPLAINT FOR DAMAGES**

## The Parties

8.     Plaintiff, Pritish Vora, a natural person, is an adult individual who resides in the County of Orange, in the State of California.

9.     Plaintiff is a "person" as defined in 15 U.S.C. § 1681a(b) and is a "consumer" as defined in 15 U.S.C. § 1681a(c).

10.     PNC is a Delaware corporation and whose address is 222 Delaware Avenue, Wilmington, DE  19801.

11.     PNC also is a National Association with its principal place of business at The Tower at PNC Plaza, 300 5th Avenue, Pittsburgh, PA  15222.

12.     PNC does not maintain an outside registered agent for service of process.  PNC may be served either at its Delaware address or at its Pittsburgh corporate address for service of process at 500 1st Ave., Pittsburgh, PA  15219.

13.     PNC is in the business of banking, and through its ordinary course of business, among other things, **engages in the discounting and negotiating of promissory notes,**[1] drafts, bills of exchange, and other evidences of debt.  [12 U.S.C. § 24, ¶ 7].  (Emphasis added).

14.     PNC also is a servicer of unsecured credit card accounts, (i.e., "transaction accounts"), as that term "transaction account" is defined by the Federal Reserve Act, Sec 19(b)(1)(C).  *See* Hatteberg v. Bank of America, N.A. et al., 8:19-cv-01236-JFW-PLA (C.D. Cal. 2019) (Doc 1, n.1) (case settled).

15.     PNC also is a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies" about "transactions or experiences" with Consumers, as described in Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A), and is a "furnisher" as defined in Regulation V, 12 C.F.R. 1022.44(c).

---

[1] Black's Law (2nd Ed.) defines "Promissory Note" as "a written promise to pay a debt by a specific date. **It can be turned into cash by transferring it to another party**." (Emphasis added).  Source: https://thelawdictionary.org/promissory-note/

COMPLAINT FOR DAMAGES

16.     PNC has faced prior suit in California for violations of the FCRA, 15 U.S.C. § 1681s-2(b) with allegations that it failed to correct or delete inaccurate information after receiving notice of such inaccuracies. *See* Peters v. PNC BANK, N.A. et al., 2:14-cv-01616-TLN-AC (C.D. Cal. 2014) (case settled).

## Statements of Fact

17.     Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

18.     Upon information and belief, The United States Supreme Court explained that F.R.Civ.P. 8(a) requires that a complaint "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

19.     Pursuant to F.R.Civ.P. 8(b)(2), Denials – Responding to the Substance. "A denial must fairly respond to the substance of the allegation."

20.     Pursuant to F.R.Civ.P. 8(b)(4), "if a party that intends in good faith to deny only part of an allegation **must admit the part that is true** and deny the rest." (Emphasis supplied).

21.     Pursuant to F.R.Civ.P. 11(b), REPRESENTATIONS TO THE COURT, an attorney or unrepresented party certifies that to the best of the person's knowledge information, and belief, formed **after an inquiry reasonable under the circumstances**. (Emphasis supplied).

22.     The Consumer Financial Protection Bureau ("CFPB") publishes a list of exemplar credit card agreements on its site with general terms and conditions.[2]

23.     The CFPB states as follows: "If you are looking for information **specific to your account**, contact the bank or institution that issued your card. By law, the issuer must make your agreement available to you upon request. If you are having trouble getting your agreement, let us know by submitting a complaint." (Emphasis supplied).

---

[2] Source: https://www.consumerfinance.gov/credit-cards/agreements/

COMPLAINT FOR DAMAGES

24.   The CFPB website (i.e., consumerfinaance.gov, and bulletins issued therein) are matters of public record.  The Court "may take judicial notice of court filings and other matters of public record."  *See* <u>Reyn's Pasta Bella, LLC v. Visa USA Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Plaintiff requests the Court to take judicial notice of the CFPB's requirement that a financial institution "by law" must make the specific agreement available to a consumer upon request.

25.   On or around early April 2017, Plaintiff made multiple requests to PNC to obtain the original signed applicable true, correct and complete front and back certified copy of a Cardholder Agreement for a PNC account number 4311-9669-0000-0926 ("the transaction account").

26.   Plaintiff required PNC to give assurance that PNC would accept payment for any alleged outstanding balance due in exchange for the original document of indebtedness in its original form within ten (10) days, showing ALL terms and conditions of the transaction account.

27.   For example, Plaintiff sent a NOTICE TO PRODUCE DOCUMENTATION directly to William S. Demchak, CEO ("CEO Demchak") via Certified Mail on April 21, 2017 requiring same.  Plaintiff signed his letter in front of a California Notary.

28.   PNC **<u>failed</u>** to produce the applicable agreement.  (Emphasis added). Instead, PNC sent a formulaic, generic agreement Copyright 2013 which was unsigned, post-dated from the issuance of any alleged card, and did not provide ALL terms and conditions of the transaction account.

29.   For example, on Page 1 of the purported "PNC Bank Consumer Credit Card Agreement," PNC included a Special Note, stating as follows, quoted verbatim: "**Examples in this Agreement are for illustration purposes only and are <u>not contract terms</u>**." (Emphasis supplied).

30.   On May 12, 2017, Plaintiff sent a detailed five-page letter titled NOTICE TO CLOSE ACCOUNT and NOTICE TO CEASE AND DESIST to

**COMPLAINT FOR DAMAGES**

PNC, directed to the attention of CEO Demchak. Plaintiff also signed the letter in front of a California Notary, and sent the letter via USPS Priority Mail Overnight.

31.   For example, Plaintiff stated the following in the letter to CEO Demchak dated May 12, 2017, "It has been over thirty (30) days since my first request on April 9, 2017. After having written communication with four different PNC agents, in has become abundantly clear that PNC is not is possession of any original documents of indebtedness regarding the account."

32.   PNC understood that Plaintiff denied he owed any alleged debt, either by way of an "account stated"[3] OR by way of any applicable written agreement, and that the matter was now legally and financially settled.

33.   PNC understood after defaulting on its obligations to Plaintiff by failing to provide the original, true, correct and complete certified copy of a written applicable copyright 2005 Cardholder Agreement, **there was no balance struck that Plaintiff agreed to except for a ZERO balance.** (Emphasis added).

34.   PNC knew (or should have known) that the alleged account was closed. In fact, PNC did not send any further account statements to Plaintiff.

35.   Upon information and belief, PNC understood the difference between an "open" account and a "closed" account. A "closed" account is, according to Black's Law, one "**to which no further additions can be made on either side…**" Thus, it is clear that the "open" or "closed" nature of a book account turns not on the account balance per se, but on the parties' expectations of possible future transactions between them. *See* <u>Cochran v. Rubens</u>, 42 Cal. App. 4th 481, 485 (1996). (Emphasis supplied).

36.   PNC understood that there was no continuation of the transaction account, and there were no "expectations of possible future transactions."

---

[3] An "account stated" is a statement between a creditor or the person to whom money is owed and a debtor (a person who owes) that a specific amount is owed as of a particular date. It can be expressed or implied, but still pursuant to the written terms of a signed agreement.

COMPLAINT FOR DAMAGES

37.     PNC knew (or should have known) the basic rudimentary understanding that a liability to a bank cannot exist **absent the presence of an applicable signed agreement evincing all written terms and conditions**. *See* Thomas v. American Express, 193 So. 3d 809 (Ala. Civ. Ct. App. 2013). (Emphasis supplied). *See also* Hatteberg, (Doc 1, ¶ 28, n.2).

38.     PNC knew (or should have known) that other banks in its home state of Pennsylvania faced class action lawsuits in attempts to collect alleged debts by supplying consumers <u>and the courts</u> with non-notarized, post-dated, inapplicable, unsigned, generic, formulaic alleged Cardmember Agreements. *See* <u>Henner et al. v. Apothaker & Associates, P.C., American Express and Capital One Bank (USA) N.A.</u>, 2:10-cv-05765-MSG (E.D. Penn. 2010) (case settled). *See also* <u>Trimble v. Discover Bank et al.</u>, 2:11-cv-01069-MSG (E.D. Penn. 2011) (case settled). *See also* <u>Wheeler v. Capital One Bank (USA) N.A. et al.</u>, 2:12-cv-05848-MSG (E.D. Penn. 2012) (case settled).

39.     Upon information and belief, PNC knew (or should have known) that whatever happens in Pennsylvania, ***does not stay in Pennsylvania***. (Emphasis added).

40.     PNC sent Plaintiff a bizarre "collection letter" in attempts to collect a **non-existent** alleged debt on or around June of 2017. (Emphasis added).

41.     Plaintiff responded to the collection letter on June 15, 2017 via certified mail, and DENIED he owed an alleged debt.

42.     On or around early December 2017, Plaintiff filed a complaint with the CFPB, alleging, among other things, that PNC lacked standing to claim a debt regarding the alleged account, and therefore PNC cannot state a claim for which relief can be granted.

43.     PNC understood that Plaintiff disputed and denied the amount of any alleged debt and demanded the ORIGINAL Cardholder Agreement.

44.     PNC responded to the CFPB complaint filed by Plaintiff with the

**COMPLAINT FOR DAMAGES**

federal agency.  PNC sent what it claimed was "the most recent statement for the account **which showed a $0.00 balance due**.  (Emphasis added).

45.  On or around early April 2018, PNC then knowingly, willfully, intentionally and maliciously, assigned the **non-existent** alleged debt to a third-party interloper, National Enterprise Systems, ("NES"), an alleged "debt collector" as defined pursuant to the Fair Debt Collection Practices Act ("FDCPA").  See 15 U.S.C. § 1692a(6).  (Emphasis added).  Yourdictionary.com defines the word "interloper" as *"an intruder or someone who butts in where he isn't wanted."*

46.  Upon information and belief, PNC failed to disclose to NES that Plaintiff had denied any alleged debt, disputed the same, and demanded the original applicable signed Cardholder Agreement.

47.  Upon information and belief, PNC failed to disclose to NES that Plaintiff had filed a complaint against PNC with the CFPB.

48.  Plaintiff received a "dunning letter" from NES dated April 6, 2018, which claimed "This account has been listed with our office for collection."

49.  Plaintiff was familiar with the word *"dunning"* as Plaintiff already found it peculiar that it rhymed with the word *"cunning."  See* Vora v. LVNV Funding, LLC et al., 8:18-cv-01674-JLS-JDE (C.D. Cal. 2018) (Doc 1, ¶ 56) (case settled). It was obvious to Plaintiff that PNC must have assigned the non-existent alleged debt to NES for collection.

50.  Plaintiff filed a complaint against NES with the CFPB and sent a NOTICE to NES on April 17, 2018 via Certified Mail.  Plaintiff disputed the alleged debt and refused the "offer to contract" with NES.

51.  Plaintiff received a response from NES dated May 29, 2018.  NES stated in writing to Plaintiff that it was "not aware of any circumstances prior to the account being placed with us that you mention in your complaint.  Per your desired resolution, NES has closed and returned the account to PNC Bank.  **NES has notified PNC Bank of your complaint**." (Emphasis supplied).

COMPLAINT FOR DAMAGES

52.     PNC knew (or should have known) that upon receipt of repeated NOTICE, the PNC transaction account number ending in 0926 was defined as an "ineligible account" **which is not subject to collection**. (Emphasis added).

53.     PNC understood that NES did not send any further collection letters to Plaintiff. PNC understood that NES was, in effect, "dun" dunning.

54.     On or around July 30, 2018, Plaintiff made a "direct dispute" to PNC by disputing false, inaccurate, incomplete and/or unverified information regarding the PNC account being furnished to Experian. PNC knew (or should have known) that the balance on the alleged account was $0.00. Therefore, the reporting of any amount other than zero was false, inaccurate, incomplete, or could not be verified.

55.     PNC knows (or should know) a direct dispute (i.e., one that is sent directly to the address of the furnisher as stated in the credit report), pursuant to Sec 623(a) of the FCRA, 15 U.S.C. § 1681s-2(a), does not have a private right of action. However, that does not give PNC standing to violate the FCRA.

56.     PNC knows (or should know) that it still must conduct a reasonable investigation upon NOTICE even if a consumer sends it as a direct dispute.

57.     In response to the direct dispute, PNC *switched* the "balance" on the Experian report from $6,875 to $299. PNC also added a "recent payment of $150" when no such "recent payment" was made, since no such balance was due.

58.     PNC was maliciously attempting to make it appear that Plaintiff had an agreement/contract to pay an alleged debt with PNC.

59.     PNC preys upon the gullibility and innocence of what Congress calls "the least sophisticated consumer."[4]

---

[4] The term "least sophisticated consumer" does not imply that a person grew up on an Amish farm in rural Pennsylvania, or one who has never used Amazon Prime. Courts use this term liberally in viewing a case from the standpoint of a person who may not be familiar with unfair, abusive or improper debt collection and credit reporting practices in violation of the FDCPA (for which banks such as PNC seem to be exempt) or FCRA (for which they are not exempt).

**COMPLAINT FOR DAMAGES**

60.   On September 24, 2018, Plaintiff sent a DEMAND NOTICE TO REINVESTIGATE to the PNC address for direct disputes (P.O. Box 3180, Pittsburgh, PA 15230).  Plaintiff sent the letter via Certified Mail.

61.   Plaintiff demanded to see supporting documents for PNC's so-called "investigation."  Primarily, Plaintiff demanded to know the following regarding the Experian report: 1. Where is the supporting document to confirm a "recent payment of $150?"  2. Who made the change to the "balance" in the "Account History" to $299?

62.   PNC *failed* to provide Plaintiff any supporting document of any alleged "recent payment" because that was just a story concocted by PNC. Furthermore, PNC *failed* to provide Plaintiff with the name of the person who switched one false balance for *another* false balance on the Experian report.

63.   On February 2, 2019, Plaintiff sent CEO Demchak a letter titled NOTICE OF VIOLATIONS OF THE FCRA via Certified Mail.  The content of the letter is on file with PNC at its corporate office, and it speaks for itself.

64.   PNC sent a response on April 3, 2019 to Plaintiff.  PNC resent Plaintiff the same inapplicable, copyright 2013 generic, unsigned, post-dated Cardholder Agreement.  PNC further stated in the letter, **"This is an attempt to collect a debt and/or enforce our lien."**  (Emphasis supplied).

65.   PNC knew (or should have known) that there was no alleged debt to collect, and no alleged lien to enforce.  Plaintiff had already DENIED that he received any applicable agreement, and already DENIED he owed an alleged debt.

66.   PNC understood and knew (or should have known) that its letter to Plaintiff was "gossamer" in nature, barely rising above the level of speculation, resembling a house of straws built on sand.

67.   PNC understood and knew (or should have known) that its claim that it "sent the agreement" was complete poppycock.

68.   PNC understood and knew (or should have known) that a consumer

**COMPLAINT FOR DAMAGES**

need not accept conclusory statements couched as factual allegations. For example, mere threadbare recitals by PNC that it "provided proof of the debt's validity" were conclusory, hearsay, and **DENIED**. (Emphasis added).

69.     On July 9, 2019, Plaintiff sent CEO Demchak a letter titled NOTICE TO STOP THE HARASSMENT via USPS Priority Mail with tracking. The content of the letter is on file with PNC at its corporate office, and it speaks for itself. Plaintiff also sent a copy via first class mail to the General Counsel of PNC, Gregory B. Jordan, and another PNC agent.

70.     As a courtesy to PNC, Plaintiff included with the letter a bar of Dove® soap (travel size) which Plaintiff purchased from a local Target® store. Plaintiff requested CEO Demchak to "*wash your "unclean hands.*""

71.     Upon information and belief, CEO Demchak did not use the soap.

72.     PNC continued to furnish information to Experian that it knew (or should have known) was false, inaccurate, incomplete, or could not be verified.

73.     PNC responded to Plaintiff in a letter dated October 28, 2019, falsely claiming that "PNC provided proof of the debt's validity." PNC continued making its conclusory statements without any evidentiary support that "the debt is valid." PNC continued to make another claim of "This is an attempt to collect a debt and/or to enforce our lien" when there was no debt to collect or lien to enforce.

74.     PNC knew (or should have known) that the CFPB made notes in a 2013 bulletin regarding the Prohibitions of Unfair, Deceptive, or Abusive Acts or Practices in the Collection of Consumer Debts. (CFPB Bulletin 2013-07).[5]

75.     PNC knows (or should know) that PNC is a "covered person" as defined by the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481(6). See also 12 U.S.C. § 5481(5) and (15)(A)(x). The CFPB has jurisdiction of covered persons pursuant to CFPA for violations of FDCPA and FCRA.

---

[5] https://www.consumerfinance.gov/policy-compliance/guidance/supervisory-guidance/bulletin-prohibition-practices-collection-consumer-debts/

COMPLAINT FOR DAMAGES

76.     Notwithstanding the powers of THOR and his mighty hammer, it may require an uprising from the public to get Congress to make an amendment or change to Sec 623 of the FCRA.  *See* Whisenant v. First Nat'l Bank & Trust Co., 258 F. Supp. 2d 1312, 1316 (N.D. Okla. 2003) ("Congress did not create a private right of action for violations of [FCRA Sec 623(a)], providing at 15 U.S.C. § 1681s-2(d) that such violations "shall be enforced exclusively...by the Federal agencies and officials and State officials identified in that section.").

77.     PNC stated to Plaintiff in its letter dated October 28, 2019 that "PNC considers the matter closed and we will not respond to future correspondence concerning this matter."

78.     Plaintiff sent a NOTICE OF DISPUTE to Experian dated January 2, 2020 regarding the PNC item appearing inaccurately on Plaintiff's Experian report.

79.     Plaintiff disputed the "Current Balance" as inaccurate and unverified.

80.     Plaintiff disputed the "Original loan amount" as unverified.

81.     Plaintiff disputed the "Amount past due" as inaccurate and unverified.

82.     Plaintiff disputed the Original "charged off" amount as unverified.

83.     Plaintiff disputed the "Current Status" as inaccurate, as the item was still in dispute with PNC.

84.     Plaintiff sent the NOTICE to Experian via Certified Mail, and the postal service confirmed delivery.

85.     PNC knows (or should know) that Experian received the NOTICE OF DISPUTE from Plaintiff and initiated a dispute via its Automated Credit Dispute Verification ("ACDV").  PNC knows (or should know) that it received the ACDV.

86.     PNC understood pursuant to the FCRA, Sec 623(b) 15 U.S.C. § 1681s-2(b)(1), after receiving a notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A) conduct an investigation with respect to the disputed information.

**COMPLAINT FOR DAMAGES**

(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate, incomplete **or cannot be verified** after any reinvestigation under paragraph (1), **for purposes of reporting to a consumer reporting agency only**, as appropriate, based on the results of the reinvestigation promptly –

    (i)    modify that item of information

    (ii)    **delete that item of information**; or

    (iii)    permanently block the reporting of that item of information. (Emphasis supplied).

## Metro 2: The Rise of e-OSCAR

87.    PNC utilizes the e-OSCAR® web-based, Metro 2® compliant, automated system that enables data furnishers such as PNC to create and respond to a consumer credit history dispute via data entry and a series of codes.[6]

88.    PNC knows (or should know) that the Metro 2 resource guide can be purchased. However, an older version is available as a matter of public record. *See* Millett v Truelink, Inc. 1:05-cv-00599-SLR (Dist. DE, 2005) (Doc 174-6).

89.    In e-OSCAR, a furnisher such as PNC can make four different types of responses: (a) verify account as accurate; (b) modify account/trade line

---

[6] e-OSCAR is an acronym for "**O**nline **S**olutions for **C**omplete and **A**ccurate **R**eporting."
Source: https://www.e-oscar.org/implementation/about-us

information as indicated; (c) delete account; or (d) delete account due to fraud.

90.   PNC knows (or should know) that if an account is modified or deleted, the furnisher is supposed to send copies of its modification to each CRA with whom the data furnisher has a reporting relationship in order to maintain uniformity.

91.   PNC knows (or should know) that it only pays .30 cents (thirty cents) to respond to Plaintiff's dispute via the e-OSCAR system.

92.   Upon information and belief, PNC knows (or should know) that sending an ACDV response costs less than a cheap trinket at a local pawn shop.

93.   Plaintiff received the dispute results from Experian dated 01/24/20.

94.   PNC *failed* to review all relevant information provided by Experian regarding Plaintiff's dispute.

95.   PNC *failed* to update its records to reflect that information it was providing to Experian was, in fact, false, inaccurate, patently misleading and/or **UNVERIFIED**. (Emphasis added).

96.   PNC *failed* to correct the inaccuracies to ensure that the false balance for the non-existent alleged debt was **DELETED**. (Emphasis added).

97.   For example, PNC simply switched the date of "First Reported" from Sep 2012 (before dispute) to Jan 2013 (after dispute). PNC knew (or should have known) these dates were false, inaccurate, incomplete, or could not be verified.

98.   For example, PNC continued to erroneously furnish a "charged off" balance of $5,906 and a "past due" balance of $6,875.

99.   PNC understood that these balances were false, inaccurate, incomplete, or could not be verified.

100.   PNC failed to conduct a proper investigation upon receipt of NOTICE from Experian, thereby violating 15 U.S.C. § 1681s-2(b)(1)(A), and failed to DELETE the item, thereby violating 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

101.   PNC understood and knew (or should have known) that any alleged

**COMPLAINT FOR DAMAGES**

balance on the unsecured transaction account ending in 0926 was already discharged/offset by promissory notes sold to outside third-party investors.

102.   In the alternative, PNC knew (or should have known) that any alleged balance on the unsecured transaction account ending in 0926 was already discharged/offset through insurance, with premiums funded by Plaintiff as a portion of finance charges, without providing full and fair disclosure to Plaintiff. (*See* Hatteberg, Doc 1, ¶ 38) (citing Cox v. Sherman, 1:12-cv-01654-TMP-MJD (S.D. Indiana 2012) (internal citations omitted).

103.   PNC was using false credit reporting as a "collateral attack" on Plaintiff for disputing the non-existent debt upon receipt of NOTCE.

104.   PNC knew (or should have known) that the alleged account ending in 0926 was no longer appearing on the TransUnion credit report.

105.   PNC knew (or should have known) that the alleged account ending in 0926 was no longer appearing on the Equifax credit report.

106.   PNC chose to "park" the non-existent alleged debt with Experian.

107.   PNC knows (or should know) that the term "park" is an industry term used by data furnishers to **willfully violate the FCRA** by furnishing false information, even when they know the information is FALSE, **and then failing to remove the item**, even when they receive a NOTICE OF DISPUTE from the CRAs. (Emphasis added).   See Rogers v. Discover Bank, 2:13-cv-01124-HGD (N.D. Ala. 2013) (case settled).   See also Ross v. LVNV FUNDING, LLC, 2:16-cv-00150-SGC (N.D. Ala. 2016) (case settled).

108.   PNC utilized false credit reporting and failure to investigate as a strategy to either coerce payment for a non-existent alleged debt and/or to ruin the credit score by keeping it artificially suppressed.

109.   PNC knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer** is liable to that consumer. (Emphasis added).

COMPLAINT FOR DAMAGES

1

### *Spokeo*[7] **has spoken**

2      110.   Plaintiff has Article III standing to file suit against PNC because: (a)
3   Plaintiff has suffered an injury in fact; (b) The injury is fairly traceable to the
4   challenged conduct of Defendant PNC; and (c) It is likely to be redressed by a
5   favorable judicial decision.

6      111.   Plaintiff has personally suffered an actual or threatened injury at the
7   hands of Defendant PNC.  *See* <u>United States v. Richardson</u>, 418 U.S. 166, 177
8   (1974).  For example, the term "consumer report" according to Sec 603(d) of the
9   FCRA [§ 1681a(d)] includes ***any*** written, oral, or other communication of any
10  information by a consumer reporting agency…which is used **or expected to be**
11  **used** for credit, insurance or employment.  (Emphasis supplied).  The failure to
12  investigate and delete unverified information will continue to cause Plaintiff
13  further harm and injury.

14     112.   Plaintiff has an injury in fact that is both particular and concrete,
15  because Plaintiff suffered a legally protected interest that is concrete, particularized
16  and actual or imminent.

17     113.   PNC violated Plaintiff's personal interests in the handling of credit
18  information which was individualized to Plaintiff.

19     114.   PNC made more than "a bare procedural violation" and failed to
20  research its own internal files to conduct a proper investigation upon receipt of
21  NOTICE OF DISPUTE from Plaintiff through a consumer reporting agency.

22     115.   Plaintiff has spent a tremendous amount of time and energy to
23  research PNC, its business practices, including but not limited to, prior civil
24  actions, and prior complaints filed against PNC with the CFPB.

25     116.   PNC acted with a reckless disregard for the FCRA, far beyond making
26  a simply careless reading of the statute.

27
28

[7] <u>Spokeo, Inc. v. Robins</u>, 136 S.Ct. 1540 (2016).  Upon information and belief, The Supreme
Court "has spoken" and in 2018, it decided not to review *Spokeo* again.

**COMPLAINT FOR DAMAGES**

117.   Plaintiff has suffered headaches, loss of sleep, and extreme frustration to fix the errors on his consumer reports.  Plaintiff also incurred expenses.

118.   Plaintiff has suffered negative emotions directly caused by Defendant PNC for its willful and/or negligent violations of the FCRA.

119.   PNC and its agents were availed the opportunity to shed their crocodile tears and simply DELETE the item of information from Plaintiff's consumer report that was patently inaccurate, materially misleading and unverified.

120.   Plaintiff extended ALL courtesies to PNC by sending ample NOTICE, including a recently sent NOTICE to its general counsel that PNC is going to be sued in Federal Court.   (See NOTICE OF SUIT/OPPORTUNITY TO CURE attached as Exhibit A to this Complaint, and Exhibit B as proof of FedEx delivery).

121.   Guided by the provisions of the relevant case law cited herein, the plain reading of the FCRA, and the statement of facts to support the Complaint, Plaintiff now brings forth his cause of action against PNC for its violations of Federal Law, 15 U.S.C. § 1681s-2(b).

## **Cause of Action**

### **Count I: Violation of the FCRA, 15 U.S.C. § 1681s-2(b)**

122.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

123.   PNC, at all times relevant herein, acted through its principals, agents, employees, affiliates and ratified, or approved of the acts or omissions alleged herein with respect to any negligent and/or willful violations of the FCRA, and were acting in the course and scope of the authority of such principals, agents, employees, and affiliates.

124.   PNC received a NOTICE OF DISPUTE letter dated January 2, 2020 and an ACDV through Experian, a consumer reporting agency.

125.   PNC understood that Plaintiff was disputing inaccuracies in an Experian report concerning PNC account number ending in 0926.

126.   PNC failed to conduct an investigation with respect to the disputed information, thereby violating § 1681s-2(b)(1)(A).

127.   PNC failed to review all relevant information provided by the consumer reporting agency, thereby violating § 1681s-2(b)(1)(B).

128.   PNC failed to properly report the results to the CRA, thereby violating § 1681s-2(b)(1)(C).

129.   PNC failed to consider that the false, inaccurate, incomplete and unverified item was no longer appearing on either the TransUnion or Equifax respective reports, and instead chose to "park" the unverified item with Experian.

130.   PNC failed to DELETE the item that was false, inaccurate, incomplete or could not be verified, thereby violating § 1681s-2(b)(1)(E).

131.   PNC engaged in willful noncompliance of the FCRA, § 1681n.

132.   PNC engaged in negligent noncompliance of the FCRA, § 1681o.

133.   As a result of PNC's willful violations, Plaintiff is entitled to any actual damages or statutory damages, and such amount of punitive damages as the court may allow, plus costs of the action.

134.   As a result of PNC's negligent violations, Plaintiff is entitled to any actual damages, plus costs of the action.

## No "lodestar method" for a Pro Se litigant

135.   Defendant PNC knows (or should know) that § 1681n and § 1681o contain a "fee shifting provision" that provides for reasonable attorney's fees to a prevailing Plaintiff, but "these provisions do not allow pro se attorney litigants to recover attorney's fees on their own behalf." *See* Morris v. Equifax Info. Servs., LLC, Case No. H-04-423, 2005 WL 5976334, at *2 (S.D. Tex. Jan. 19, 2005) (citations omitted). *See also* Vaksman v. C.I.R. 54 F. App'x 592 (5th Cir. 2002) ("As a pro se litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees.").

136.   Plaintiff, as a Pro Se, cannot "bill the client," for **he IS "the client**."

(Emphasis added).  *See* <u>Vora v. Equifax Information Services, LLC et al.</u>, 8:19-cv-00302-AG-KES (C.D. Cal. 2019) (Doc 23, 25:1) (case settled).

**<u>Demand for Jury Trial F.R.Civ.P. 38(b)</u>**

137.   Plaintiff hereby demands a jury trial on all issues regarding the FCRA subject to a trier of fact.  "Whether a reasonable investigation has been conducted is generally a question of fact for the jury."  *See* <u>Bruce v. First U.S.A. Bank, N.A.</u>, 103 F.Supp. 2d 1135, 1143 (E.D. Mo. 2000).

WHERFORE, based on the foregoing, Plaintiff prays for a favorable ruling against PNC on an entry of judgment from this Honorable Court as follows:

a.   For willful violations, actual damages or statutory damages pursuant to § 1681n(a)(1)(A).

b.   For willful violations, such amount of punitive damages as the court may allow pursuant to § 1681n(a)(2).

c.   Costs of the action pursuant to § 1681n(a)(3).

d.   For negligent violations, actual damages pursuant to § 1681o(a)(1) and costs pursuant to § 1681o(a)(2).

e.   Any other relief that the Court may deem just and proper.

Respectfully submitted on this day of ___Feb, 21, 2020___

By: Pritish Vora, Pro Se

Pritish Vora
27758 Santa Marg. Pkwy, #530
Mission Viejo, CA  92691
(949) 292-8359
pvora2112@gmail.com

Page 19 of 19

**COMPLAINT FOR DAMAGES**

# Exhibit A

Pritish Vora                                                    February 18, 2020
27758 Santa Marg. Pkwy, #530                                   Sent via FedEx
Mission Viejo, CA  92691


PNC Bank, N.A. ("PNC")
Attn: Gregory B. Jordan, General Counsel
The Tower at PNC Plaza
300 5ᵗʰ Ave.
Pittsburgh, PA  15222

Re: PNC Account # ending in 0926


### *** NOTICE OF SUIT/OPPORTUNITY TO CURE ***

Dear Mr. Jordan,

PNC has defaulted on its obligations to provide an original, true, correct and complete
copyright 2005 signed cardholder agreement regarding the above referenced alleged
account, despite repeated demands.

**PNC IS GOING TO BE SUED IN FEDERAL COURT** for violations of the Fair
Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

Upon receipt of service of the complaint, PNC will have an opportunity to cure and
resolve all claims amicably without the need for expensive and protracted litigation.

If PNC does not respond to the verified complaint within 21 days upon receipt of
service, then a copy of a default judgment will be sent to the address on record.

Regards,

*Pritish Vora*
Pritish Vora, Pro Se


**THIS IS AN ATTEMPT TO MITIGATE DAMAGES FOR VIOLATIONS OF THE
FAIR CREDIT REPORTING ACT.  ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.  THIS IS A NOTICE FROM A CONSUMER.**

# Exhibit B

February 20, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 777800081050

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | J.HELVY | Delivery Location: | 300 5TH AVE |
| Service type: | FedEx 2Day | | PITTSBURGH, PA, 15222 |
| Special Handling: | Deliver Weekday | Delivery date: | Feb 20, 2020 08:31 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 777800081050 | Ship Date: | Feb 18, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

**Recipient:**
Gregory B. Jordan, Esq., PNC BANK, N.A.
The Tower at PNC Plaza
300 5th Avenue
PITTSBURGH, PA, US, 15222

**Shipper:**
Pritish Vora,

