1  Pritish Vora
2  27758 Santa Marg. Pkwy, #530
3  Mission Viejo, CA  92691
4  949-292-8359
5  Plaintiff in Pro Per



6
7
8
9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11
12  Pritish Vora,                    Case No.: 8:20-cv-00366-DOC-KES
13              Plaintiff,           **FIRST AMENDED COMPLAINT**
14       vs.                         **[F.R.Civ.P. 15(a)(1)]**
15  PNC BANK, N.A.,
16              Defendant.
17
18  COMES NOW, Plaintiff, Pritish Vora ("Plaintiff"), by way of Pro Se, files with the
19  Honorable Court his FIRST AMENDED COMPLAINT for damages against
20  Defendant PNC BANK, N.A. ("PNC") for violations of the Fair Credit Reporting
21  Act, 15 U.S.C. § 1681s-2(b), ("FCRA"), all parts and sub-parts that apply, and
22  alleges herein as follows:
23                    **Preliminary Statement**
24       1.    The FCRA was the product of Congressional concern over abuses in
25  the credit reporting industry. *See* Guimond v. Trans Union Credit Information Co.,
26  45 F.3d 1329, 1333 (9th Cir. 1995).
27       2.    The legislative history of the FCRA indicates that is was crafted to
28  protect consumers from the transmission of inaccurate information about them and

to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner.  "These consumer oriented objectives support a liberal construction of the FCRA." Guimond, 45 F.3d at 1333, citing Kates v. Croker National Bank, 776 F.2d 1396, 1397 (9th Cir. 1985).

3.     "The threat of punitive damages under § 1681n of the FCRA is the primary factor deterring the erroneous reporting by the credit reporting industry." See Brim v. Midland Cred. Mgmt., 795 F.Supp. 2d 1255, 1265 (N.D. Ala. 2011) (citing Yohay v. City of Alexandria Employees Cred. Union, 827 F.2d 967, 972 (4th Cir. 1987)).  For example, the Court in Brim upheld damages awarded by a jury of $100,000 in actual and $623,180 in punitive, respectively.[1]

4.     The term "actual damages" in § 1681o includes emotional distress and humiliation.   Guimond, 45 F.3d at 1333.   "Neither a denial of credit nor transmission of a credit report to a third party is required for liability." Id.

5.     "Furnishers" are sources that provide credit information to credit reporting agencies ("CRAs").  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009).  See also 12 C.F.R. § 1022.41(c).  Under FCRA, furnishers have the duty to investigate and correct inaccurate information, **and an individual may bring a private cause of action to sue a furnisher for its failure to fulfill those duties**. 15 U.S.C. § 1681s-2(b); Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1060 (9th Cir. 2002).  (Emphasis added).

## Jurisdiction and Venue

6.     Jurisdiction of this Court arises pursuant to Sec 618 of the FCRA, [15 U.S.C. § 1681p], and pursuant to 28 U.S.C. § 1331.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in

---

[1] Midland Credit Management appealed the damages award to the 11th Circuit, but the parties eventually settled without a ruling. See Jamon Brim v. Midland Credit Management, Inc. (Case No. 11-12537-G).

**FIRST AMENDED COMPLAINT**

this District, the harm to Plaintiff occurred in this District, PNC regularly conducts business in this District and California, therefore establishing personal jurisdiction.

### The Parties

8.     Plaintiff, Pritish Vora, a natural person, is an adult individual who resides in the County of Orange, in the State of California.

9.     Plaintiff also is a "person" as defined in 15 U.S.C. § 1681a(b), and Plaintiff also is a "consumer" as defined in 15 U.S.C. § 1681a(c).

10.   PNC is a National Association with its principal place of business at The Tower at PNC Plaza, 300 5th Avenue, Pittsburgh, PA 15222.

11.   PNC does not maintain an outside registered agent for service of process.  PNC may be served at its Pittsburgh corporate address for service of process at 500 1st Ave., Pittsburgh, PA 15219.

12.   PNC is in the business of banking, and through its ordinary course of business, among other things, **engages in the discounting and negotiating of promissory notes**,[2] drafts, bills of exchange, and other evidences of debt.  [12 U.S.C. § 24, ¶ 7].  (Emphasis added).

13.   PNC also is a servicer of <u>unsecured</u> credit card accounts.

14.   PNC also is a person who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies ("CRAs") about transactions or experiences with consumers, including Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("TransUnion").

### Background

15.   Plaintiff filed his Complaint against PNC on February 21, 2020 (Doc 1), and Defendant PNC filed its Answer on March 23, 2020 (Doc 8).

---

[2] <u>Black's Law</u> (2nd Ed.) defines "Promissory Note" as "a written promise to pay a debt by a specific date. **It can be turned into cash by transferring it to another party.**"  (Emphasis added).  Source: https://thelawdictionary.org/promissory-note/

**FIRST AMENDED COMPLAINT**

16. Prior to Defendant filing its Answer, counsel for PNC sent correspondence to Plaintiff dated March 17, 2020 (the content of which is confidential settlement communication inadmissible pursuant to FRE 408).

17. Plaintiff receives his mail at a mail drop in a strip mall, of which most stores were closed during the current "lockdown." Unaware that counsel had sent the letter, Plaintiff sent counsel an e-mail on March 27, 2020, indicating his intent to amend the complaint.

18. Plaintiff was in receipt of the letter sent by counsel on March 31, 2020, and immediately sent counsel correspondence via e-mail (the content of which is confidential settlement communication inadmissible pursuant to FRE 408). Counsel confirmed receipt of the e-mail.

19. Pursuant to F.R.Civ.P. 1, in the spirit of cooperation, and in an effort to avoid further litigation, Plaintiff attempted to resolve the dispute amicably, whereby Plaintiff provided PNC a counter offer outlining his terms, and an opportunity to respond to Plaintiff by close of business on April 3, 2020.

20. PNC understood that Plaintiff made a counter offer which would have fully disposed of the FCRA claim against Defendant PNC, and thus remove the case from the Honorable Judge Carter's docket. PNC further understood the amount of settlement is one that Congress would find as "not substantial,"[3] but most likely enough to cover the bar tab and dinner for six at Mastro's.

21. Counsel conveyed the offer, but PNC did not accept the terms of the offer by the deadline, and thus implied that it would rather litigate the case.

22. Pursuant to F.R.Civ.P. 15(a)(1), "A party may amend its pleading once as a matter of course within…21 days after service of a responsive pleading." [F.R.Civ.P. 15(a)(1)(B)].

---

[3] *See* Vora v. Equifax Information Services et al., 8:19-cv-00302-AG-KES ("Plaintiff's complaint concerns issues that Congress has found to be important in an area where damages are often not substantial."). (Doc 6) (Guilford, A).

**FIRST AMENDED COMPLAINT**

## Statements of Fact

23.     Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

24.     Upon information and belief, The United States Supreme Court explained that F.R.Civ.P. 8(a) requires that a complaint "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

25.     Pursuant to F.R.Civ.P. 8(b)(2), Denials – Responding to the Substance. "A denial must fairly respond to the substance of the allegation."

26.     Pursuant to F.R.Civ.P. 8(b)(4), "if a party that intends in good faith to deny only part of an allegation **must admit the part that is true** and deny the rest." (Emphasis supplied).

27.     Pursuant to F.R.Civ.P. 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

28.     Pursuant to F.R.Civ.P. 11(b), REPRESENTATIONS TO THE COURT, "by presenting to the court a pleading, written motion, or other paper – whether signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**." (Emphasis supplied).

29.     PNC knows (and should know) that it is a financial institution.

30.     The term "financial institution" means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person that, directly or indirectly, holds a transaction account[4] **(as defined in section 19(b) of the Federal Reserve Act)** belonging to the consumer. [15 U.S.C. §1681a(t)]. (Emphasis supplied).

31.     PNC holds transaction accounts belonging to consumers.

---

[4] Source: https://www.federalreserve.gov/aboutthefed/section19.htm

**FIRST AMENDED COMPLAINT**

32.     PNC knows (or should know) a transaction account is "any deposit or account on which the depositor or account holder is permitted to make withdrawals by negotiable or transferable instrument...**for the purpose of making payments or transfers to third persons or others**.  (Emphasis added).

33.     PNC knows (or should know) that an unsecured credit card **is a transaction account**.  (Emphasis added).

34.     On January 2, 2020, Plaintiff sent a NOTICE OF DISPUTE to Experian via Certified Mail regarding an item being reported inaccurately on Plaintiff's Experian report. (See Exhibit A1).[5]

35.     PNC knew (or should have known) that Experian received the NOTICE OF DISPUTE via Certified Mail, tracking number 7019 2280 0000 7202 2516.  (See Exhibit A2).

36.     PNC knew (or should have known) that it received the above referenced NOTICE OF DISPUTE from Experian pursuant to the FCRA.  [15 U.S.C. § 1681i(a)(2)].

37.     PNC knew (or should have known) that Experian also sent an Automated Consumer Dispute Verification ("ACDV") to PNC regarding Plaintiff's above referenced NOTICE OF DISPUTE.

38.     PNC knew (or should have known) that it received the ACDV for the above referenced NOTICE OF DISPUTE.

39.     PNC understood that Plaintiff disputed the "Current Balance" being furnished by PNC to Experian as inaccurate and unverified.

40.     PNC understood that Plaintiff disputed the original "loan amount" (i.e. credit limit) being furnished by PNC to Experian as unverified.

41.     PNC understood that Plaintiff disputed the "Amount past due" as inaccurate and unverified.

---

[5] Confidential information such as home address, social security number and birth date redacted. [F.R.Civ.P. 5.2(a)].

**FIRST AMENDED COMPLAINT**

42.     PNC understood that Plaintiff disputed the Original "charged off" amount as unverified.

43.     PNC understood that Plaintiff disputed the "Current Status" as inaccurate, as PNC did not report that the PNC item was being disputed.

44.     PNC understood that Plaintiff demanded the "original, signed, certified consumer contract" regarding the item being furnished by PNC.

45.     PNC understood that all unverified information MUST be removed from a consumer report.

46.     PNC understood pursuant to the FCRA, Sec 623(b) 15 U.S.C. § 1681s-2(b)(1), after receiving a notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

> (A) conduct an investigation with respect to the disputed information.

> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];

> (C) report the results of the investigation to the consumer reporting agency;

> (D) if the investigation finds the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

> (E) if an item of information disputed by a consumer is found to be inaccurate, incomplete **or cannot be verified** after any reinvestigation under paragraph (1), **for purposes of reporting to a consumer reporting agency only**, as appropriate, based on the results of the reinvestigation promptly –

> > (i)     modify that item of information

> > (ii)    **delete that item of information**; or

**FIRST AMENDED COMPLAINT**

(iii)    permanently block the reporting of that item of information. (Emphasis supplied).

47.    PNC understood that credit reporting is voluntary. PNC further understood that it lacked standing to furnish ANY information regarding Plaintiff that was inaccurate, incomplete, or cannot be **verified**. (Emphasis added).

48.    PNC utilizes the e-OSCAR® web-based, Metro 2® compliant, automated system that enables data furnishers such as PNC to create and respond to a consumer credit history dispute via data entry and a series of codes.[6]

49.    In e-OSCAR, a furnisher can make four different types of responses upon receipt of a NOTICE OF DISPUTE and ACDV: (a) verify account as accurate; (b) modify account/trade line information as indicated; (c) delete account; or (d) delete account due to fraud.

50.    PNC knows (or should know) that if an item is modified or deleted, the furnisher sends a copy of its modification to each CRA with whom the data furnisher has a reporting relationship in order to maintain uniformity.

51.    During the time Plaintiff sent a NOTICE OF DISPUTE to Experian dated January 2, 2020, PNC was sending monthly cycle updates to Equifax regarding the PNC item in dispute.

52.    In the alternative, during the time Plaintiff sent a NOTICE OF DISPUTE to Experian dated January 2, 2020, PNC was NOT sending monthly cycle updates to Equifax regarding the PNC item in dispute.

53.    During the time Plaintiff sent a NOTICE OF DISPUTE to Experian dated January 2, 2020, PNC was sending monthly cycle updates to TransUnion regarding the PNC item in dispute.

54.    In the alternative, during the time Plaintiff sent a NOTICE OF DISPUTE to Experian dated January 2, 2020, PNC was NOT sending monthly

---

[6] e-OSCAR is an acronym for "**O**nline **S**olutions for **C**omplete and **A**ccurate **R**eporting."
Source: https://www.e-oscar.org/implementation/about-us

**FIRST AMENDED COMPLAINT**

1   cycle updates to TransUnion regarding the PNC item in dispute.

2       55.   PNC understood and knew (or should have known) that the PNC item

3   in dispute was already DELETED on the Equifax consumer report.

4       56.   PNC understood and knew (or should have known) that the PNC item

5   in dispute was already DELETED on the TransUnion consumer report.

6       57.   Plaintiff received the dispute results from Experian dated 01/24/2020.

7       58.   PNC **failed** to review all relevant information provided by Experian

8   regarding Plaintiff's dispute. (Emphasis added).

9       59.   PNC **failed** to update its records to reflect that information it was

10   furnishing to Experian was, in fact, false, inaccurate, patently misleading and/or

11   **UNVERIFIED**. (Emphasis added).

12       60.   PNC **failed** to correct the inaccuracies to ensure that the false balance

13   for the non-existent alleged debt was **DELETED**. (Emphasis added).

14       61.   PNC operated by way of deception.   For example, PNC simply

15   "updated" the date the item was "First Reported" from Sep 2012 (before dispute)

16   to Jan 2013 (after dispute).  PNC knew (or should have known) that these dates

17   were false, inaccurate, incomplete or could not be verified.

18       62.   For example, PNC continued to erroneously furnish a "charge off"

19   balance of $5,906 and a "past due" balance of $6,875, despite being in receipt of

20   Plaintiff's NOTICE OF DISPUTE.

21       63.   PNC understood and knew (or should have known) that these alleged

22   balances were false, inaccurate, incomplete, or could not be verified.

23       64.   PNC failed to conduct a proper investigation upon receipt of NOTICE

24   from Experian, thereby violating 15 U.S.C. U.S.C. § 1681s-2(b)(1)(A).

25       65.   PNC failed to DELETE the item, thereby violating 15 U.S.C. § 1681s-

26   2(b)(1)(E)(ii).

27       66.   PNC chose to "park" the non-existent debt with Experian.

28       67.   PNC understood that the term "park" or "to park" is when a furnisher

willfully violates the FCRA by furnishing a false balance and/or a false item, even when it knows the item is false, and then fails to remove it, even when it receives a NOTICE OF DISPUTE. *See* <u>Rogers v. Discover Bank</u>, 2:13-cv-01124-HGD (N.D. Ala. 2013) (Plaintiff sued on FCRA after he denied he owed a debt, and denied he was provided with the applicable agreement).

68.     PNC understood that Plaintiff made demands for the original, true, correct and complete front and back certified copy of the applicable signed copyright 2005 Cardholder Agreement.

69.     PNC understood that it failed to provide Plaintiff with any signed applicable agreement. *See* <u>Wheeler v. Capital One Bank (USA) N.A. et al.</u>, 2:12-cv-05848-MSG (E.D. Penn. 2012) (Plaintiff sued the bank after Capital One attempted to collect an alleged debt using post-dated, unsigned, generic, formulaic inapplicable Cardmember Agreement).

70.     PNC (through its parent company), acquired National City Corporation in the fourth quarter of 2008.

71.     PNC understood and knew (or should have known) that Plaintiff did NOT open the alleged account listed on the Experian report with PNC. (See Affidavit of Plaintiff, attached herewith as Exhibit B).

72.     PNC understood that it had NO applicable cardholder agreement with Plaintiff. PNC further understood that any attempt by PNC to claim it sent "the applicable agreement" was hearsay, gossamer in nature, barely rising above the level of speculation, and **DENIED**. (Emphasis added). *See* <u>Thomas v. American Express</u>, 193 So. 3d. 809 (Ala. Civ. Ct. App. 2013).

73.     PNC understood that Plaintiff **DENIED** he owed any alleged debt on an "account stated."[7]   In fact, PNC did cease sending Plaintiff monthly account

---

[7] An "account stated" is a statement between a creditor or the person to whom money is owed and a debtor (a person who owes) that a specific amount is owed as of a particular date. It can be expressed or implied, but still pursuant to the written terms of a signed agreement.

**FIRST AMENDED COMPLAINT**

statements once Plaintiff denied he owed the debt, disputed the same, and demanded strict proof thereof. (Emphasis added).

74. PNC understood that it was not currently sending "debt collection" letters to Plaintiff with specific demands <u>for payment of any specific amount</u>.

75. PNC understood that it was not making "collection calls" to Plaintiff demanding that Plaintiff pay monies to PNC.

76. PNC tried to "pawn off" the non-existent alleged debt to a third-party interloper, National Enterprise Systems, ("NES") in hopes that its agent would attempt to collect the non-existent alleged debt. Yourdictionary.com defines the word "interloper" as *"an intruder or someone who butts in where he isn't wanted."*

77. PNC understood that Plaintiff DENIED he owed a debt to NES.

78. PNC understood that neither PNC nor its agent(s) had standing to collect the non-existent debt from Plaintiff.

79. For example, neither PNC nor any of its agent(s) had standing to file suit against Plaintiff in Orange County Superior Court (or elsewhere), in attempts to collect the **non-existent** alleged debt. (Emphasis added).

80. PNC understood and knew (or should have known) that there would be one less lawsuit on "account stated" clogging the very busy courtroom of the Honorable Judge Corey S. Cramin in Orange County Superior Court, where "debt collectors" often file suit. (*See* <u>Hatteberg v. Capital One Bank (USA), N.A.</u>, 8:19-cv-01425-DOC-KES (C.D. Cal. 2019) (<u>Hatteberg</u>, Doc 1, Exhibit 6).

81. PNC found a deceptive workaround. For example, PNC utilized false credit reporting and failure to investigate upon receipt of a NOTICE OF DISPUTE from a CRA as a strategy to either coerce payment for a non-existent debt and/or to willfully ruin the credit score of Plaintiff, and to keep it artificially suppressed.

82. PNC failed to delete the item upon NOTICE OF DISPUTE as a means to portray Plaintiff in a false light and a "deadbeat" to other potential alleged creditors or employers who may obtain or view Plaintiff's Experian report.

83.    Plaintiff, however, is NOT a "deadbeat."  Plaintiff pays all of his legitimate debts.  Indeed, Plaintiff's Vantage Score[8] on Equifax and TransUnion are both rated as "Excellent" with a score of 769 (See printout from Credit Karma as of April 6, 2020, attached herewith as Exhibit C).

84.    PNC understood and knew (or should have known) that any alleged balance on the unsecured transaction account being furnished to Experian was **discharged/offset by promissory notes** sold to outside third-party investors. (Emphasis added).

85.    PNC understood and knew (or should have known) that any alleged balance on the unsecured transaction account being furnished to Experian was **discharged/offset by insurance premiums** collected by PNC, and funded by Plaintiff, without PNC providing Plaintiff FULL AND FAIR DISCLOSURE in any alleged, applicable Cardmember Agreement.  (*See* Hatteberg, Doc 1, ¶ 42) ("Putting it differently, a consumer cannot "default" on the alleged debt if the insurance policy covers any "loss" by the third-party investors who purchase the receivables.") (citing Cox v. Sherman, 1:12-cv-TWP-MJD (S.D. Indiana, 2012) (**"The financial engineers made a bulletproof system where the originating bank is paid in full and the investors are paid in full regardless of a default in the payment of the receivables."**). (*See* Cox, Doc 1, ¶ 38).  (Emphasis added).

86.    PNC and its agent(s) understood and knew (or should have known) that Plaintiff did NOT "default" on the PNC transaction account, and PNC further understood that there was NO balance due. (See Affidavit of Plaintiff).

87.    PNC and its agent(s) prey upon the gullibility and innocence of what Congress calls "the least sophisticated consumer."[9]

_____

[8] Vantage Score is a proprietary score owned by Experian.  It is similar but not exactly the same as a FICO score.

[9] The term "least sophisticated consumer" does not imply that a person grew up on an Amish farm in rural Pennsylvania, or one who has never used Amazon Prime.  Courts use this term

**FIRST AMENDED COMPLAINT**

88.     PNC knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer** is liable to that consumer.  (Emphasis added).

89.     Plaintiff has Article III standing to file suit against PNC because: (a) Plaintiff has suffered an injury in fact; (b) The injury is fairly traceable to the challenged conduct of Defendant PNC; and (c) It is likely to be redressed by a favorable judicial decision.  *See* Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016).

90.     Plaintiff has personally suffered an actual or threatened injury at the hands of Defendant PNC.  *See* United States v. Richardson, 418 U.S. 166, 177 (1974).  For example, the term "consumer report" according to Sec 603(d) of the FCRA [§ 1681a(d)] includes ***any*** written, oral, or other communication of any information by a consumer reporting agency…which is used **or expected to be used** for credit, insurance or employment.  (Emphasis supplied).  The failure to investigate and delete unverified information will continue to cause Plaintiff further harm and injury.

91.     Plaintiff has an injury in fact that is both particular and concrete, because Plaintiff suffered a legally protected interest that is concrete, particularized and actual or imminent.

92.     PNC violated Plaintiff's personal interests in the handling of credit information which was individualized to Plaintiff.

93.     PNC made more than "a bare procedural violation" and failed to research its own internal files to conduct a proper investigation upon receipt of NOTICE OF DISPUTE from Plaintiff through a consumer reporting agency, thereby making any "bona fide error" defense more suitable for the garbage disposal.

---

liberally in viewing a case from the standpoint of a person who may not be familiar with unfair, abusive or improper debt collection and credit reporting practices in violation of the FDCPA or FCRA, respectively.

**FIRST AMENDED COMPLAINT**

94.   Plaintiff has spent a tremendous amount of time and energy to research PNC, its deceptive business practices, including but not limited to, prior civil actions, and prior complaints filed against PNC with the CFPB.

95.   PNC acted with a reckless disregard for the FCRA, far beyond making a simply careless reading of the statute, thereby making its actions willful.

96.   Plaintiff has suffered headaches, loss of sleep, and extreme frustration to fix the errors on his consumer reports.  Plaintiff also incurred expenses.

97.   Plaintiff has suffered negative emotions directly caused by Defendant PNC for its willful and/or negligent violations of the FCRA.

98.   PNC could have, but chose not to, simply DELETE the item of information from Plaintiff's Experian consumer report that was patently inaccurate, materially misleading and **unverified**.  (Emphasis added).

99.   PNC understood that prior to filing suit, Plaintiff sent a NOTICE OF SUIT/OPPORTUNITY TO CURE to its chief counsel, Gregory B. Jordan, via FedEx, in an attempt to mitigate damages.  (See Exhibit D1, attached herewith).

100.  PNC knew (or should have known) that its corporate office and/or its chief counsel received the NOTICE.  (See Exhibit D2, attached herewith).

101.  PNC understood and knew (or should have known) that its chief counsel never bothered to respond to Plaintiff.

102.  PNC understood and knew (or should have known) that Plaintiff made every attempt to resolve the dispute amicably without expectation of payment from PNC for its willful and/or negligent violations of the FCRA, **and to avoid having to file suit**.  (Emphasis added).

103.  At all times relevant, PNC understood and knew (or should have known) that Plaintiff did not release PNC from its liability to Plaintiff to provide the applicable, signed cardholder agreement.  PNC further understood that it defaulted on its obligations to Plaintiff to provide the signed applicable agreement, and failed to comply with the FCRA.

## **Cause of Action**

## **Count I: Violation of the FCRA, 15 U.S.C. § 1681s-2(b)**

104.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

105.   PNC, at all times relevant herein, acted through its principals, agents, employees, affiliates and ratified, or approved of the acts or omissions alleged herein with respect to any negligent and/or willful violations of the FCRA, and were acting in the course and scope of the authority of such principals, agents, employees, and affiliates.

106.   PNC received a NOTICE OF DISPUTE letter dated January 2, 2020 and an ACDV through Experian, a consumer reporting agency.

107.   PNC understood that Plaintiff was disputing inaccuracies in an Experian report concerning a PNC transaction account being furnished by PNC and being reported by Experian.

108.   PNC failed to conduct a proper investigation with respect to the disputed information, thereby violating § 1681s-2(b)(1)(A).

109.   PNC failed to review all relevant information provided by the consumer reporting agency, thereby violating § 1681s-2(b)(1)(B).

110.   PNC failed to properly report the results to the CRA, thereby violating § 1681s-2(b)(1)(C).

111.   PNC chose to "park" the unverified item with Experian even after receiving a NOTICE OF DISPUTE from Plaintiff through a CRA.

112.   PNC failed to DELETE the item that was false, inaccurate, incomplete or could not be verified, thereby violating § 1681s-2(b)(1)(E).

113.   PNC failed to consider the fact that in order to furnish a "charge off" amount that varies from a "past due" amount, there must be an applicable, signed cardholder agreement (i.e., what the CFPB calls "the effective credit agreement").

114.   PNC failed to consider the fact that it had no applicable agreement.

**FIRST AMENDED COMPLAINT**

115. PNC engaged in willful noncompliance of the FCRA, § 1681n.

116. PNC engaged in negligent noncompliance of the FCRA, § 1681o.

117. As a result of willful violations by PNC, Plaintiff is entitled to any actual damages or statutory damages, and such amount of punitive damages as the court may allow, plus costs of the action.

118. As a result of negligent violations by PNC, Plaintiff is entitled to any actual damages, plus costs of the action.

119. Pursuant to the FCRA, § 1681n and § 1681o contain a "fee shifting provision" that provides for reasonable attorney's fees to a prevailing Plaintiff.

120. PNC knows (or should know) that Plaintiff is not an attorney, that Plaintiff is a Pro Se, and is therefore unrepresented.

121. PNC knows (or should know) that Plaintiff cannot "bill the client," for **he IS "the client."** (Emphasis added).

## Demand for Jury Trial F.R.Civ.P. 38(b)

122. Plaintiff hereby demands a jury trial on all issues regarding the FCRA subject to a trier of fact. "Whether a reasonable investigation has been conducted is generally a question of fact for the jury." *See* <u>Bruce v. First U.S.A. Bank, N.A.</u>, 103 F.Supp. 2d 1135, 1143 (E.D. Mo. 2000).

WHERFORE, based on the foregoing, Plaintiff prays for a favorable ruling against PNC on an entry of judgment from this Honorable Court as follows:

      a.    For willful violations, actual damages of $10,000[10] or statutory damages of $1,000, whichever is greater, pursuant to § 1681n(a)(1)(A).

      b.    For willful violations, such amount of punitive damages as the

---

[10] *See* <u>Rumbough v Capital One Services, Inc. and Capital One Bank (USA) N.A.</u>, 6:07-cv-01484-ACC-DAB (M.D. Fla. 2008) (Rendering judgment of $10,000 on offer by Capital One and acceptance by Plaintiff for a FCRA suit).

**FIRST AMENDED COMPLAINT**

court may allow pursuant to § 1681n(a)(2).[11] [12]

c.    Costs of the action pursuant to § 1681n(a)(3).

d.    For negligent violations, any actual damages pursuant to § 1681o(a)(1) and costs pursuant to § 1681o(a)(2).

e.    Equitable relief to instruct PNC to permanently delete and block the PNC item from being furnished to Experian.[13]

f.    For any other relief that this Honorable Court finds proper.

Respectfully submitted on this day of ___April 8, 2020___

By: Pritish Vora, Pro Se

Pritish Vora
27758 Santa Marg. Pkwy, #530
Mission Viejo, CA  92691
(949) 292-8359
pvora2112@gmail.com

---

[11] *See* Dixon-Rollins v. Experian Information Solutions, Inc., 753 F. Supp. 2d 452 (E.D. Penn, 2010) (Upholding judgement of actual damages of $30,000 and reducing punitive damages from $500,000 to $270,000).

[12] *See* Saunders v. Branch Banking and Trust Company et al., 526 F.3d 142 (4th Cir. 2008) (Upholding statutory damages of $1,000 **and punitive damages of $80,000** in favor of Plaintiff for a FCRA suit).  (Emphasis added).

[13] *See* Engelbrecht v. Experian et al., 5:12-cv-01547-VAP-OPx (C.D. Cal. 2012) (The Honorable Chief District Judge Virginia A. Phillips upholding **that equitable relief is available** to private plaintiffs under the FCRA).  (Emphasis added).

**FIRST AMENDED COMPLAINT**

## **CERTIFICATE OF SERVICE**

I certify that I mailed the foregoing document and Exhibits to the Clerk of the Court via USPS Express Mail Overnight, tracking number EL 547711568US on April 8, 2020, and mailed a copy via United States Postal Service first class mail to the party below:

Cathy L. Granger, (CA Bar # 156453)

Wolfe &Wyman LLP

2301 Dupont Drive

Suite 300

Irvine, CA  92612

(949) 475-9200

clgranger@ww.law


Pritish Vora, Plaintiff, Pro Se

27758 Santa Marg. Pkwy, #530

Mission Viejo, CA  92691

949-292-8359

pvora2112@gmail.com

**FIRST AMENDED COMPLAINT**

# EXHIBIT A1

Pritish Vora                                                     January 2, 2020
(NAME ADDRESS REDACTED)

DOB:   (REDACTED)
SS #:   (REDACTED)


Experian
PO Box 9701
Allen, TX  75013

Sent via Certified Mail # 7019 2280 0000 7202 2516


### NOTICE OF DISPUTE


Re: PNC BANK, N.A. Partial Acct # 431196690000....

Dear Experian,

I am disputing the following balances and information regarding the account being furnished by PNC and being reported by Experian on my consumer report:

- Current Balance (inaccurate and unverified, amount is $0.00)
- Original loan amount (unverified)
- Amount past due (inaccurate and unverified, amount is $0.00)
- Original "charged off" amount (unverified)
- Current Status (inaccurate, the account is still in dispute with PNC)

According to the Fair Credit Reporting Act ("FCRA"), Section 609(a)(1), your company is required by federal law to verify, **through the physical verification of the original, signed, certified consumer contract** for any and all accounts that a furnisher attempts to furnish in my consumer report and file.

I demand to see a copy of the verifiable, validated proof (an original contract with a wet-ink signature on it) that you have on file for the account listed above.

According to the FCRA, all **unverified** information MUST be removed from a consumer report within thirty (30) days upon receipt of notice of dispute.

The definition of a "consumer report" according to Section 603(d)(1) of the FCRA includes any written, oral, other other communication of **_any_** information by a consumer reporting agency...which is used <u>or expected to be used</u> for credit, insurance or employment. The failure to properly investigate and DELETE the account will continue to cause me harm and injury.

Based on the foregoing, after the completion of the reinvestigation, please send me an updated copy of my credit report at no cost to my address listed on this letter.

Sincerely,

Pritish Vora

# EXHIBIT A2

**UNITED STATES**
**POSTAL SERVICE**

April 6, 2020

Dear Pritish Vora:

The following is in response to your request for proof of delivery on your item with the tracking number:
**7019 2280 0000 7202 2516**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | January 7, 2020, 9:59 am |
| **Location:** | ALLEN, TX 75013 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 1.0oz |

## Recipient Signature

Signature of Recipient:

Address of Recipient:   75013

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

# EXHIBIT B

## AFFIDAVIT IN SUPPORT OF FIRST AMENDED COMPLAINT

1. An unrebutted affidavit acts as truth in commerce.

2. An unrebutted affidavit acts as judgment in commerce.

3. The term "verify" is defined in Black's Law (10th Ed.) as "to prove to be true; to confirm or establish the truth or truthfulness of; to authenticate; to confirm or substantiate by oath or affidavit; to swear to the truth of."

4. Affiant is the Plaintiff in the FIRST AMENDED COMPLAINT.

5. Affiant has personal knowledge of the facts, and, if called as a witness, Affiant could and would competently testify thereto.

6. Affiant sent "NOTICE TO PRODUCE DOCUMENTATION" to the attention of William S. Demchak ("CEO Demchak") demanding the original credit card application and agreement containing a wet-ink signature via Notary.

7. Affiant did NOT receive the requested documentation upon demand.

8. Affiant did NOT originate the transaction account being furnished to Experian with the entity PNC BANK, N.A.

9. Affiant did NOT report the card "lost or stolen."

10. Affiant was NOT provided with the applicable signed Cardholder Agreement evincing FULL AND FAIR DISCLOSURE of all terms and conditions, and therefore Affiant did NOT agree, assent or consent to any applicable terms and conditions of the PNC transaction account.

11. Affiant is NOT a "debtor" for the PNC transaction account. The term "debtor" is defined by California Civil Code § 1788.2(h).

12. Affiant does NOT owe any monies to PNC for the transaction account.

13. Affiant does NOT reside in the exchequer chamber, where "the King's debtors are confined." (See Black's Law, 2nd Ed., definition of the word "HELL.").

14. Affiant DENIES there is any outstanding "debt" on the transaction account. Any alleged "debt" was already discharged/offset by promissory notes.

15. Affiant asked CEO Demchak via Certified Mail, "Who was the person that funded the promissory notes on the alleged account?"

16. Affiant did NOT receive a response to the question from CEO Demchak.

*Pritish Vora   April 8, 2020*

Printed name and date

*Pritish Vora*

Signature

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of *Orange*
Subscribed and sworn to (or affirmed) before me on this *8th* day
of *April* , 20 *20* , by *Pritish Vora*

_____ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
Signature *Susanne N. Pires* (Seal)



SUSANNE HELGA FERREIRA
Notary Public - California
Orange County
Commission # 2152915
My Comm. Expires May 13, 2020

# EXHIBIT C


Home


Recommendations


Cards


Loans

**See my options**



↑ 1 pt

**769**

**Excellent**

TRANSUNION

↑ 1 pt

**769**

**Excellent**

EQUIFAX

Updated Apr 6, 2020

▶ How is my score calculated? ○

CREDIT



ACCOUNTS




TAX



AU⁻



**Suggested for your Credit**

We suggest offers based on your credit, Approval Odds, and money we make from our partners. Advertiser Disclosure





★★★★☆

17 Reviews

U.S. Bank Cash+™ Visa Signature® Card

Our estimate for members like you  ⓘ

**FAIR APPROVAL ODDS**

4/6/2020 3:15 PM

# EXHIBIT D1

Pritish Vora                                          February 18, 2020
27758 Santa Marg. Pkwy, #530                          Sent via FedEx
Mission Viejo, CA  92691


PNC Bank, N.A. ("PNC")
Attn: Gregory B. Jordan, General Counsel
The Tower at PNC Plaza
300 5th Ave.
Pittsburgh, PA  15222

Re: PNC Account # ending in 0926


### *** NOTICE OF SUIT/OPPORTUNITY TO CURE ***

Dear Mr. Jordan,

PNC has defaulted on its obligations to provide an original, true, correct and complete copyright 2005 signed cardholder agreement regarding the above referenced alleged account, despite repeated demands.

**PNC IS GOING TO BE SUED IN FEDERAL COURT** for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

Upon receipt of service of the complaint, PNC will have an opportunity to cure and resolve all claims amicably without the need for expensive and protracted litigation.

If PNC does not respond to the verified complaint within 21 days upon receipt of service, then a copy of a default judgment will be sent to the address on record.

Regards,

*Pritish Vora*
Pritish Vora, Pro Se


**THIS IS AN ATTEMPT TO MITIGATE DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS IS A NOTICE FROM A CONSUMER.**

# EXHIBIT D2

February 20, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 777800081050

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | J.HELVY | Delivery Location: | 300 5TH AVE |
| Service type: | FedEx 2Day | | PITTSBURGH, PA, 15222 |
| Special Handling: | Deliver Weekday | Delivery date: | Feb 20, 2020 08:31 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 777800081050 | Ship Date: | Feb 18, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

Recipient:
Gregory B. Jordan, Esq., PNC BANK, N.A.
The Tower at PNC Plaza
300 5th Avenue
PITTSBURGH, PA, US, 15222

Shipper:
Pritish Vora,

