1  Pritish Vora

2  27758 Santa Marg. Pkwy, #530

3  Mission Viejo, CA  92691

4  949-292-8359

5  Plaintiff in Pro Per



FILED
CLERK, U.S. DISTRICT COURT

May 6, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY:____KD____DEPUTY

6

7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  Pritish Vora,                          Case No.: 8:20-cv-00366-DOC-KES

13             Plaintiff,                   **PLAINTIFF'S OPPOSTION TO**

14       vs.                               **DEFENDANT'S MOTION TO**

15  PNC BANK, N.A.,                        **STRIKE PORTIONS OF FIRST**

16             Defendant.                   **AMENDED COMPLAINT**

17

18                                          **Date: June 15, 2020**

19                                          **Time: 8:30am**

20                                          **Place: Courtroom 9D**

21

22                                          **Hon. David O. Carter**

23

24

25  COMES NOW, Plaintiff, Pritish Vora ("Plaintiff"), by way of Pro Se, files with the

26  Honorable Court his OPPOSITION to strike portions of his first amended

27  complaint ("FAC").    Plaintiff also files a Declaration in support, filed

28  contemporaneously herewith.

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

# I. **Background**

Plaintiff filed his FAC against PNC for violations of the Fair Credit Reporting Act ("FCRA") on April 10, 2020 (Doc 12).  The FAC brought forth the same cause of action pursuant to the FCRA, but added a claim for equitable relief, specified the damages for willful violations, and attached additional exhibits, **including an attached AFFIDAVIT**.  (Emphasis added).

Defendant PNC filed a Motion to Strike portions of the Amended Complaint on April 30, 2020 (Doc 14).  In addition, PNC filed its Answer and CounterClaims (Doc 13).  Plaintiff shall address the CounterClaims in detail through a Rule 12(b)(6), and move the Court to dismiss with prejudice after completing the required meet and confer with opposing counsel pursuant to Local Rule 7-3.

# II. **Legal Standard**

Motions to strike "are generally disfavored [by courts] because the motions may be used as delaying tactics and because **of the strong policy favoring resolution on the merits**." *See* Barnes v. AT&T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). (Emphasis supplied).

Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *See* New York City Employees' Ret. Sys. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009).  "Where the moving party cannot adequately demonstrate prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted).

According to Plaintiff, a clear reading of the motion to strike by PNC shows that it is a dilatory tactic and is made in bad faith.  Counsel sent e-mail to Plaintiff to inform him regarding the motion, and Plaintiff responded accordingly, stating his objections.  (See Declaration of Plaintiff in support, ¶'s 5, 6, and 7).

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

### III. Memorandum

Defendant first starts out by claiming that Plaintiff's amended complaint contains passages that are "impertinent," "immaterial," "refer to settlement discussions," "protected from disclosure under Federal Rule of Evidence 408," would "confuse the factfinder," and "to the prejudice of PNC."

Defendant wants the Court to strike paragraphs 16, 17, 18, 19, 20, 21, 84, 85, 101, 102, 120 and 121 from the FAC as "immaterial and impertinent." (See, in general, PNC motion to strike, Doc 14, pg. 3).

The word "immaterial" means that it does not tend to prove or disprove the truth or existence of a fact which bears a direct relationship to a matter in controversy."[1]

The word "impertinent" means "Evidence of facts which do not belong to the matter in question, is impertinent and inadmissible.   In general, what is immaterial is impertinent, and what is material is, in general, not impertinent.[2]

According to the 9th Circuit, "Our interpretation of the Federal Rules of Civil Procedure begins with the relevant rule's "plain meaning."" *See* Kootenai Tribe of Idaho v. Veneman, 313, F.3d 1094, 1111 (9th Cir. 2002).

Pursuant to F.R.Civ.P. 1, the Scope and Purpose that govern the procedure in all civil actions, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

According to the "plain meaning" of the first and foremost rule, it applies "to the parties" and should be construed to secure the "inexpensive determination" of every action.   Certainly, F.R.Civ.P. 1 would encompass this particular civil action as well.

Before we get to the merits of why PNC's motion to strike must be denied,

---

[1] https://definitions.uslegal.com/i/immaterial/

[2] https://dictionary.thelaw.com/impertinent

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

1   Plaintiff must first address the factual deficiencies made by opposing Counsel.  On
2   page 3 of the Motion to Strike ("MTS"), Defendant inaccurately implies that
3   Plaintiff "does not address whether the account existed before PNC emerged from
4   the merger as the "new" entity."  (MTS, 3:21-24).  PNC recognized that Plaintiff
5   filed an affidavit with the FAC, and makes reference to it.  (MTS, 3:20-21).

6       Counsel knows (or at least by now) should know that the transaction account
7   in dispute was regarding an alleged original National City credit card, well before
8   the merger by PNC and National City.  Indeed, Plaintiff demanded the ORIGINAL
9   copyright 2005 Cardholder Agreement (See FAC, ¶ 68).   What PNC has
10  apparently failed to disclose to its counsel is that there were TWO separate cards
11  furnished to Experian simultaneously, of which one was closed over a decade ago.[3]
12  PNC also knows that Plaintiff has sent numerous correspondence to the PNC
13  executive office, challenging the validity of the alleged debt of the card ending in
14  0926, demanding answers regarding the promissory notes, and demanding the
15  applicable, signed Cardholder Agreement.

16      PNC further misstates in its MTS regarding paragraph 79 in conclusory
17  fashion that Plaintiff called the credit card account "non-existent."  (MTS, 4:5).
18  Paragraph 79 in the FAC does NOT reference the credit card as non-existent.  It
19  says the ***alleged debt*** is non-existent.  (See FAC, ¶ 79).  (Emphasis added).

20      PNC mischaracterizes facts regarding Plaintiff's numerous attempts to
21  obtain the original, applicable, signed agreement.  PNC did not file a motion for a
22  more definitive statement pursuant to F.R.Civ.P. 12(e), nor did it file a 12(b)(6).  It
23  appears as if PNC is actually using its 12(f) as a platform for a 12(b)(6) to dismiss
24  Plaintiff's factual allegations, and the Court must disregard all other references to
25  PNC's challenges to the factual elements of Plaintiff's claims.

26  _____

[3] PNC filed a counterclaim regarding an "original account" from National City
27  ending in "4004" claiming that it became a "second account" ending in 0926,
28  which is false.  As stated, this will be addressed by motion in a timely fashion.

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

PNC wants the Court to strike paragraph 16 from the FAC, which states as follows: "Prior to Defendant filing its Answer, counsel for PNC sent correspondence to Plaintiff dated March 17, 2020 (the content of which is confidential settlement communication inadmissible pursuant to FRE 408)." (Doc 12, FAC, ¶ 16).

PNC states these settlement communications "prejudice PNC." How so? This is a material fact, and in compliance with F.R.Civ.P. 1. Nothing in that paragraph reveals the content of the communication. Besides, the Court's Order Setting Scheduling Conference states "This order sets out instructions that the parties must follow in preparing for the Scheduling Conference." (Doc 11).

The Court, in its Scheduling Order, wants "**a statement of what settlement discussions have occurred** (specifically excluding any statement of the terms discussed) and what settlement procedure is recommended pursuant to Local Rules 16-15 through 16-15.9." (See Doc 11, 3:4-7). (Emphasis supplied).

PNC is attempting to strike paragraphs from the FAC which are <u>required</u> to be addressed by the Scheduling Order, meaning a representation to the Court pursuant to F.R.Civ.P. 11(b), and thus it will also appear on the docket.

Paragraph 17 is also certainly not "immaterial" or "impertinent," and neither is 18 nor 19. (See FAC ¶'s 17, 18, 19). These are just simply stated FACTS regarding the settlement discussions, without revealing the actual content of those discussions. In other words, "excluding any statement of the terms."

The Court makes distinctions between settlement communications which reveal actual contents of the settlement, and which do not. *See* <u>Rodriquez v. Wells Fargo Bank, N.A.</u> 2:16-cv-00302-MCE-AC (E.D. Cal. 2018). The Court in <u>Rodriquez</u> considered the **actual contents of the "back-and-forth" settlement letters appearing on the docket**. (Emphasis added). The Court GRANTED a motion in limine in favor of the Plaintiff who wanted them excluded from trial. Here, no such settlement e-mails or letters have been filed with the Court.

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

1    Defendant also moves to strike paragraph 20.  It is a FACT that if PNC had
2    accepted Plaintiff's counter offer, it would have indeed fully disposed of the FCRA
3    claim and in turn "removed the case from the Honorable Judge Carter's docket."
4    (See FAC ¶ 20).  Once again, no prejudice to either party here so far.

5    Regarding the settlement being "not substantial," Plaintiff linked it to a
6    footnote, citing a COURT ORDER by the Honorable Judge Andrew J. Guilford[4]
7    from a case where Plaintiff was a party.  (See FAC, pg. 4, n.3).

8    The footnote and reference are <u>not</u> immaterial, or impertinent, and do not
9    prejudice the parties.   What Judge Guilford stated regarding Congress was
10   absolutely correct.  Here, Plaintiff's statutory damages for one count of willful
11   violations is capped by Congress at $1,000.   Plaintiff is seeking $10,000 in
12   maximum actual damages, after reading a Florida case against Capital One, where
13   the bank made an offer of judgment for $10,000 on a FCRA claim, and agreed to
14   remove the disputed item from the Plaintiff's consumer reports.  Again, these are
15   facts.  The FCRA itself lists the amount for statutory damages, and Plaintiff cited
16   the FCRA case he found against Capital One in a footnote (See FAC, pg. 16, n.10).

17   Punitive damages are of course, subjective and determined by a jury.
18   Nothing in the paragraphs would lead any jury to portray PNC as "oppressive and
19   indifferent." PNC cannot claim it would be prejudiced.  Besides, the reference to
20   Mastro's does not reveal anything, and is highly subjective.  The "bar tab and
21   dinner for six" would be dependent on various factors such as the quality of wine,
22   amount of food, etc.  Plaintiff did not state that it would be "so negligible."

23   Indeed, even in the cases referenced by Plaintiff in the FAC that went to trial

---

[4] Following nearly 14 years of distinguished service on the bench for the Central District of California, Southern Division, Honorable Andrew Guilford has retired and is now available as a mediator, arbitrator and private judge, including special master assignments, and case evaluator.  Source: https://www.judicatewest.com/adr/andrew-guilford

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

and where the Plaintiff obtained actual and punitive damages, if once calculates the amount of damages as a percentage of the net worth of the respective defendant, **ALL amounts would be considered by Congress as often "not substantial."** (Emphasis added).

Defendant takes paragraph 21 from the FAC completely out of context. For example, counsel states, "He pleads PNC refused to settle and "implied that it would rather litigate the case."" (See FAC, ¶ 21). Paragraph 21 in the FAC says, "Counsel conveyed the offer, but PNC did not accept the terms of the offer by the deadline, and thus implied that it would rather litigate the case." Well of course, there is always an offer and acceptance, with a deadline. If the parties are able to reach an amicable agreement during litigation, then they must do so, pursuant to F.R.Civ.P. 1. Obviously, either PNC wanted to settle, or it did not want to settle.

Plaintiff realized that PNC did not want to settle on the terms that the parties discussed via e-mail, and again, of which the specifics were NOT revealed in the FAC, and thus do not appear on the docket. Plaintiff then filed his FAC and added a claim for equitable relief. PNC responded by filing its answer and counterclaim, and now is trying to "poo-poo" the fact that the case would have resolved much sooner. It is PNC that first reached out to settle after suit was filed. Plaintiff did his best to accommodate PNC, but to no avail.

PNC incorrectly characterizes paragraphs 101 and 102 as "settlement communications." Paragraph 101 in the FAC says, "PNC understood and knew (or should have known) that its chief counsel never bothered to respond to Plaintiff." (See FAC, ¶ 101, Exhibit D1). Plaintiff sent a NOTICE to the chief counsel of PNC prior to filing suit with an "OPPORTUNITY TO CURE." No specifics are listed, and nothing was communicated back, since, as Plaintiff correctly states, PNC's chief counsel "never bothered to respond" to Plaintiff's NOTICE.

PNC then moves to strike the following paragraph, which says "PNC understood and knew (or should have known) that Plaintiff made every attempt to

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

1    resolve the dispute amicably and without expectation of payment from PNC for its

2    willful and/or negligent violations of the FCRA, **and to avoid having to file suit**."

3    (Emphasis added).  (See FAC, ¶ 102).  Obviously, BEFORE filing suit, one should

4    attempt to resolve the dispute.  Indeed, to even make a prima facie claim on FCRA,

5    one has to first file a dispute with the consumer reporting agency.  Again, nothing

6    is revealed in the paragraph to indicate any specific "settlement communication."

7    When a consumer sends a dispute letter to a CRA, or as a "direct dispute" to the

8    furnisher, there is no "expectation of payment."

9    Paragraphs 101 and 102 are also directly linked to the previous paragraphs,

10   and to Plaintiff's exhibit.  See, for example, FAC, ¶'s 99 and 100, which PNC does

11   not move to strike.  PNC answered those paragraphs, by admitting to each.  (See

12   Doc 13, ¶'s 99 and 100).  Therefore, since paragraphs 99 and 100 are directly

13   connected to 101, and 102, it would be improper to strike paragraphs 101 and 102.

14   **PROMISSORY NOTES ARE QUITE RELEVANT TO PLAINTIFF'S FCRA**

15   **CLAIM, and MUST NOT BE STRIKEN**

16   It is quite egregious that PNC moves to strike paragraphs 84 and 85 from the

17   FAC, since these were pled almost verbatim from the initial complaint, for which

18   PNC answered by "denying" them.  (See Doc 1 and 8, ¶'s 101 and 102).

19   PNC suggests in its MTS that Plaintiff is unable to claim "any alleged

20   balance" has been discharged/offset by promissory notes, or allege that PNC has an

21   insurance policy.  (See FAC, ¶ 84 and 85).  First off, these are factual allegations

22   made pursuant to an inquiry reasonable under the circumstances and in full

23   compliance with the pleading standards of F.R.Civ.P. 8(a) and F.R.Civ.P. 11(b).

24   PNC claims that these allegations are "immaterial," and "no essential

25   relationship to the claim for relief."  On the contrary, the factual allegations are

26   very material, and very relevant.  Paragraph 84 says "PNC understood and knew

27   (or should have known) that any alleged balance on the unsecured transaction

28   account being furnished to Experian was **discharged/offset by promissory notes**

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

sold to outside third-party investors." (Emphasis added).  Regarding Paragraph 85, Plaintiff also cites a case that was heard before <u>this</u> Court: <u>Hatteberg v. Capital One Bank (USA) N.A</u>. 8:19-cv-01425-DOS-KES (C.D. Cal. 2019), which cited a case from Indiana: <u>Cox v. Sherman</u> 1:12-cv-01654-TMP-MJD (S.D. Indiana 2012).  Plaintiff was already familiar with both cases, and simply "borrowed" their respective factual allegations because it applied to Plaintiff's claim.   (Both <u>Hatteberg</u> and <u>Cox</u> were involving unsecured alleged credit card debt, and settled).

PNC is attempting to "win its case on summary judgment" with no discovery, but through a Rule 12(f), by making the false assumption that Plaintiff cannot dispute the validity of any alleged debt with a furnisher by filing a NOTICE to the furnisher through a CRA, and thus suggesting that the information that PNC furnished to Experian must be accurate as a matter of law.

PNC did not file a 12(b)(6), so obviously PNC knows that Plaintiff has stated a proper FCRA claim.   According to Plaintiff, it appears that PNC is attempting to prohibit discovery, including, but not limited to, the funding source of the promissory notes for an unsecured alleged debt, a transaction account being furnished inaccurately with Experian, and regarding the whereabouts of the terms and conditions of any original alleged signed agreement.

To support the motion to strike, PNC mentions <u>Rosas v. Carnegie Mortg</u>., 2012 U.S. Dist. LEXIS 71262 at *25 (C.D. Cal. 2012).  However, the <u>Rosas</u> case is irrelevant to the factual allegations and circumstances here.

<u>Rosas</u> was regarding mortgages, which are secured, unlike a credit card transaction account, which is unsecured.  <u>Rosas</u> admitted she defaulted, Plaintiff did not.  <u>Rosas</u> was facing a foreclosure on real property, Plaintiff is not.  <u>Rosas</u> was making a fraud claim pursuant to the heightened pleading standard of Rule 9(b), whereas Plaintiff is not.  <u>Rosas</u> entered into a restructuring plan (i.e., she contracted by way of a Forbearance Plan on a secured property), then made a claim for breach of contract, etc.  Plaintiff has yet to see the original agreement.

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

1   Plaintiff's case is completely different.  Plaintiff is making a FCRA claim,
2   by first disputing the validity of an alleged debt, demanding the applicable signed
3   agreement, and then filing NOTICE with a CRA regarding information that
4   **Plaintiff has pled with particularity that the information is either inaccurate,**
5   **incomplete, and/or unverified**.  (Emphasis added).  (See, in general, FAC).
6   PNC has already made binding judicial admissions to the Court.   An
7   admission in the answer – like a stipulation – "**constitutes a binding judicial**
8   **admission**."  *See* Crest Hill Land Dev., LLC v. City of Joliet, 396 F.3d 801, 805
9   (7th Cir. 2005).  (Emphasis supplied).
10   For example, PNC "admits" to paragraphs 12 and 13 and 14 in the FAC,
11   thereby admitting that it engages in the discounting and negotiating of promissory
12   notes, that it is a servicer of unsecured transaction accounts, and that it is a
13   furnisher.  (See Doc 13, ¶'s 12, 13, 14).
14   Therefore, Plaintiff should be able to conduct discovery regarding PNC on
15   the alleged **unsecured debt**, as it is directly correlated to his prior NOTICE to
16   PNC and claim that there is NO signed Cardholder Agreement, that the balance is
17   $0.00, that PNC was furnishing unverified information, and that PNC failed to
18   conduct a proper investigation upon dispute from a CRA.  (Emphasis added).
19   PNC then turns to another real estate related case that deals with signed
20   agreements, secured property, and deeds of trust on claims regarding a "slander of
21   title" "RESPA," "HAMP agreement," etc.  *See* Croskrey v. Ocwen Loan Servicing,
22   LLC, 2016 U.S. Dist. LEXIS 72301 at *48 (C.D. Cal. 2016).  Croskrey was also
23   before this Honorable Court, but the facts are wholly dissimilar.  Croskrey had a
24   signed agreement, and was facing foreclosure **on a secured mortgage of**
25   **$353,821.85**.  (Emphasis added).  It has no relation to Plaintiff's FCRA allegations.
26   Finally, PNC wants to strike paragraphs 120 and 121 of the FAC regarding
27   attorneys' fees.  It is well established that a Pro Se cannot collect legal fees.  *See*
28   Vaksman v. C.I.R., 54 F. App'x 592 (5th Cir. 2002).  "As a pro se litigant, [the

petitioner] is not entitled to attorney['s] fees because, quite simply, **he did not actually 'pay' or 'incur' attorney['s] fees**." (Emphasis supplied). Plaintiff is not making a "thinly-veiled plea for damages" regarding attorneys' fees. Plaintiff is simply stating facts. The FCRA "fee shifting" provision does not apply to Pro Se litigants. There is nothing "improper" or "impertinent" regarding this fact. PNC claims this is "not useful background information or properly add to the FAC." (MTS, 8:20-21). Actually, it was in the original complaint, and there is no prejudice to PNC by Plaintiff mentioning this fact.

## IV. Conclusion

The Parties are required to comply with a COURT ORDER regarding the Scheduling Conference, where the Court has ruled, "This order sets out instructions that the parties **must** follow in preparing for the Scheduling Conference." (Emphasis added). The word "must" is defined by Dictionary.com as "to be obliged or bound to by an imperative requirement."[5]

Plaintiff and Defendant each must submit their own paragraphs for the Case Management Report, including a statement of "what settlement discussions have occurred." Plaintiff plans to fully comply with the COURT ORDER regarding the information that the Court is requesting. PNC's motion to strike the paragraphs 16 through 21 are in contradistinction to the COURT ORDER. No actual e-mails were revealed on the docket regarding the "statement of the terms discussed."

Indeed, Defendant did not even cite any supporting information to strike paragraphs 16, 17, 18 or 19. It only attempted to do so for paragraphs 20 and 21. (See MTS, pg. 5). Furthermore, paragraphs 101 and 102 in the FAC are not at all "settlement correspondence." Even if they were, there is no specific information.

The parties attempted to settle, but were unable to reach terms, so Plaintiff filed the FAC, and attached an affidavit. Paragraphs 84 and 85 are crucial and

---

[5] Source: https://www.dictionary.com/browse/must

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

imperative to Plaintiff's FCRA claim.  PNC wrote to Plaintiff in October 2019 that it "considered the matter closed" and would not communicate with Plaintiff again. However, Plaintiff alleges that PNC was still furnishing inaccurate information on Plaintiff's Experian report, and disputed it.  After Plaintiff filed the FAC, Defendant hastily filed its CounterClaims, and is now trying to "backtrack" with its MTS, and limit the information that Plaintiff can seek in discovery.

Plaintiff need not prove his FCRA case beyond a reasonable doubt, or by clear and convincing evidence.  Plaintiff requires to prove it by a preponderance of the evidence, which is supported by factual allegations in the FAC, and the exhibits, including the affidavit. **PNC has yet to file any counter-affidavit.** (Emphasis added).  Certainly, if PNC wants to "deny" the claims regarding promissory notes, then it has the ability to do so, thus making it ripe for discovery.

Paragraphs 84 and 85 are linked to other paragraphs in the FAC.  To strike them would be akin to "gutting the complaint." According to the Supreme Court, "The [well-pleaded-complaint] rule makes the plaintiff the master of the claim." *See* Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Under notice pleading in Federal Court, the Complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests." *See* Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted).

"This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *See* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed. 1 (2002).  If PNC did not want to pursue this case any further, then it could have accepted Plaintiff's counter-offer and be done with it.

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC

Plaintiff has pled his factual allegations against PNC in the FAC with particularity to meet the pleading standards, and PNC must ANSWER them pursuant to the Federal Rules of Civil Procedure, and for equity and justice.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests this Honorable Court to DENY Defendant's motion to strike paragraphs 16, 17, 18, 19, 20, 21, 84, 85, 101, 102, 120 and 121 in the FAC.

Respectfully submitted on this day of _May 4, 2020_

By: Pritish Vora, Pro Se

Pritish Vora
27758 Santa Marg. Pkwy, #530
Mission Viejo, CA  92691
(949) 292-8359
pvora2112@gmail.com

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

1

## <u>CERTIFICATE OF SERVICE</u>

2  I certify that I mailed the foregoing document to the Clerk of the Court via USPS

3  Priority Mail with tracking on May 4, 2020, and a copy via United States Postal

4  Service first class postage prepaid was mailed to the party below:

5

6  Cathy L. Granger, (CA Bar # 156453)

7  Wolfe &Wyman LLP

8  2301 Dupont Drive

9  Suite 300

10  Irvine, CA  92612

11  (949) 475-9200

12  clgranger@ww.law

13

14

15

16

17  Pritish Vora, Plaintiff, Pro Se

18  27758 Santa Marg. Pkwy, #530

19  Mission Viejo, CA  92691

20  949-292-8359

21  pvora2112@gmail.com

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE FAC**

PRITION VARA
27758 SANTA MARG. PKWY
#550
MISSION VIEJO, CA 92691

* TIME SENSITIVE!
PLEASE FILE ON DOCKET
Thank You!

CLERK OF THE COURT
255 E. TEMPLE ST.
SUITE TS-134
LOS ANGELES, CA 90012-3332

KES

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018. All rights reserved.

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY
★ MAIL ★

FROM:

FROM: PRITISH VORA
27958 SANTA MARG. PKWY
#530
MISSION VIEJO, CA 92691

TO: CLERK OF THE COURT
255 E. TEMPLE ST,
SUITE TS-134
LOS ANGELES, CA
90012 - 3332

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

PRESS FIRMLY TO SEAL

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY - 7 2020
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION   BY DEPUTY

CLERK, U.S. DISTRICT COURT RECEIVED
MAY - 6 2020
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

To schedule free
Package Pickup,
scan the QR code.

USPS.COM/PICKUP

Retail

UNITED STATES
POSTAL SERVICE®

P

US POSTAGE PAID
$7.75

Origin: 92690
05/04/20
0568448056D-08

PRIORITY MAIL 1-DAY ®

0 Lb 7.80 Oz

1006

C032

EXPECTED DELIVERY DAY: 05/05/20

SHIP
TO:
255 E TEMPLE ST
STE 134
LOS ANGELES CA 90012-3309

USPS TRACKING® NUMBER

9505 5163 3489 0125 6561 51

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

* When used internationally,
declaration label may be required.

* Domestic only

P S00001000014

* Domestic only.   ╳ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

♻ This envelope is made from post-consumer waste. Please recycle - again.



**TRACKED*** ★ ★
**INSURED*** ★

**UNITED STATES**
**POSTAL SERVICE**®

**PRIORITY**®
**MAIL**

**FLAT RATE ENVELOPE**
ONE RATE ★ ANY WEIGHT*

**VISIT US AT USPS.COM**®
ORDER FREE SUPPLIES ONLINE

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

* Domestic only.   ✕ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

P S 0 0 0 0 1 0 0 0 0 1 4