1  Pritish Vora

2  27758 Santa Marg. Pkwy, #530

3  Mission Viejo, CA  92691

4  949-292-8359

5  Plaintiff in Pro Per

```
        FILED
CLERK, U.S. DISTRICT COURT

     MAY 2 2 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY
```

6

7

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  Pritish Vora,                          Case No.: 8:20-cv-00366-DOC-KES

13            Plaintiff,                   **VORA'S MEMORANDUM IN**

14       vs.                              **SUPPORT OF MOTION TO**

15  PNC BANK, N.A.,                        **DISMISS COUNTER-CLAIMS**

16            Defendant.                   **FILED BY PNC**

17  _____              **F.R.Civ.P. 12(b)**

18

19  PNC BANK, N.A.,                        **Hearing Date: Mon. June 22, 2020**

20            Counter-Claimant,            **Time: 8:30am**

21       vs.                              **Court Room 9D**

22  Pritish Vora,                          **Hon. David O. Carter**

23            Counter-Defendant

24

25

26  COMES NOW, Pritish Vora, Counter-Defendant, ("Vora'), by way of Pro Se, files

27  with the HONORABLE COURT his MEMORANDUM IN SUPPORT to dismiss

28  the Counter-Claims filed by PNC BANK, N.A. ("PNC").  (Doc 20).

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

## I. Background

1  Vora filed a suit against PNC for violations of the Fair Credit Reporting Act
2  ("FCRA"). (Doc 1). PNC filed an ANSWER. (Doc 8). Vora filed a FAC on
3  April 10, 2020 (Doc 12). In response to the FCRA suit, PNC filed its ANSWER
4  and COUNTER-CLAIM on April 30, 2020 (Doc 13), and a MOTION TO STRIKE
5  certain paragraphs in the FAC. (Doc 14). That motion and opposition are
6  currently pending before the Court. The Deputy Clerk filed a NOTICE OF FILER
7  DEFICIENCY by PNC on May 1, 2020, for missing the caption for
8  "COUNTERCLAIMANTS V. COUNTERDEFENDANTS." (Doc 16). PNC
9  corrected the filing deficiency on May 15, 2020 (Doc 20).
10  Vora's dispute over an alleged debt dates back three years, and it warrants a
11  bit of background as to why we are here. PNC, in its Counter Complaint ("Counter
12  Compl."), lists just a portion of correspondence between Vora and PNC, while
13  leaving out damaging details that would defeat its own claims against Vora.
14  Indeed, the letters sent by Vora to PNC are quite revealing of PNC's deceptive
15  business practices, and if the Counter Compl. were to move forward, it would just
16  be a complete robbing of Vora's time to prove the obvious fallacies by PNC.
17  One salient fact remains, that PNC conveniently FAILS to mention in its
18  Counter Compl., that from ALL the correspondence going back and forth since
19  Vora sent his first "demand notice" to the CEO of PNC, William S. Demchak,
20  ("CEO Demchak") to produce the ORIGINAL application and ORIGINAL,
21  applicable, signed Cardholder Agreement, **there has been NOT ONE demand for**
22  **payment sent by PNC to collect the alleged final $6,875.79 so-called "balance"**
23  **as mentioned in the Counter-Compl.** (Emphasis added).
24  First off, Vora has informed, repeatedly, to the CEO, to the chief counsel,
25  and to various agents of PNC, via certified mail, that PNC **lacks standing** to claim
26  ANY amount of alleged debt against Vora, and therefore cannot state a claim for
27  which relief can be granted. (Emphasis added). Nothing has changed.

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

PNC now accuses Vora of "fraud" and engaging in a "ruse." (Counter Compl. ¶'s 65, 66 and 67). However, as Vora shall clearly demonstrate, there is only ONE party here that has engaged in a "ruse," and appears to have now committed "fraud upon the Court," **and that is PNC**. (See MEET AND CONFER LETTER in NOTICE OF MOTION, Exhibit A). (Emphasis added).

According to the Supreme Court, "fraud vitiates the most solemn contracts, documents and even judgments." *See* <u>U.S. v. Throckmorton</u>, 98 U.S. 61, 65 (1878). <u>Throckmorton</u> was a case involving land grants that were falsely and fraudulently antedated. It might be a century plus old case, but still a good one.

PNC, a multi-billion-dollar litigant, is now distorting facts, detracting from the core issue, and deflecting the Court's attention away from the valid FCRA claim filed by Vora, through the abrupt filing of its Counter Compl. in conjunction with its answer. (See, in general, Doc 20).

According to Vora, the Counter Compl. is just another dilatory tactic by PNC and is made in bad faith. Nevertheless, in compliance with the Local Rules, Vora sent NOTICE requesting counsel to WITHDRAW the claims, counsel refused, and Vora conducted the meet-and-confer conference call to discuss thoroughly the issues and reasons for Vora filing his MOTION. Indeed, Vora even made a plea to counsel to get PNC to reopen settlement talks to AVOID protracted litigation, but to no avail.

## II. Memorandum of Points and Authorities

There are several legal arguments brought forth by Vora in this MOTION to justify a full dismissal with prejudice of the Counter Compl. and the causes of action mentioned therein.

1.    That PNC has violated the Federal Rules of Civil Procedure 11(b), and may have committed "fraud upon the Court."

2.    That PNC cannot bring forth such claims, as PNC lacks Article III standing to support any claim for relief, and cannot show an injury in fact.

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

3.     That PNC's First (Breach of Contract), Second (Open Book Account), Third, (Account Stated) and Forth (Fraud) claims ALL fail to state a claim for which relief can be granted.

### III. Legal Standard: Violation of F.R.Civ.P. 11(b); Fraud Upon the Court

F.R.Civ.P. 11(b) states as follows, in relevant part: REPRESENTATIONS TO THE COURT: By presenting to the court a **pleading**, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances. (Emphasis supplied). The Counter Compl. is a "pleading."

Pursuant to F.R.Civ.P. 11(b)(1), "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or **needlessly increase the cost of litigation**. Pursuant to F.R.Civ.P. 11(b)(3), "the factual contentions **have evidentiary support** or, if specifically so identified, **will likely have evidentiary support** after reasonable opportunity for further investigation or discovery." (Emphasis supplied).

The doctrine of "fraud upon the court" has been characterized "as a scheme to interfere with the judicial machinery performing task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." *See* In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Action, 538 F.2d 180, 195 (8th Cir. 1976) (citations omitted); *see also* Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978) (holding "only the most egregious misconduct, such as bribery of judge or jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court.").

The Ninth Circuit noted that "one species of fraud upon the court occurs when an **"officer of the court"** perpetrates fraud affecting the ability of the court or jury to impartially judge a case." *See* Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995). (Emphasis supplied).

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

### Argument: Rule 11(b); Fraud Upon the Court

PNC's Counter-Compl. rests on a false notion that it cannot provide Vora with original documentation of the account number ending in #0926 (i.e. the disputed alleged debt that prompted the FCRA claim), ("the #0926 account"), because "NCB[1] received a report of some irregularity concerning the Original Account, prompting NCB to replace the Original Account with a new account, the last four numbers of which were #0926 ("Second Account")." (See Counter Compl. ¶ 11 and 20). PNC knows, and its counsel knows, that this is a complete and utter **fabrication**, a ruse devised by PNC after Vora filed complaints with the Consumer Financial Protection Bureau ("CFPB"). (Emphasis added).

Indeed, PNC acknowledges that Vora filed a Complaint with the CFPB. (See Counter Compl. ¶ 35). PNC even acknowledges that PNC "launched an investigation into Plaintiff's First CFPB Complaint." (Counter Compl. ¶ 37).

Indeed, PNC acknowledges that Vora filed a second Complaint with the CFPB (See Counter Compl. ¶ 38).

PNC falsely represented to the CFPB regarding an account number ending in #4004 being converted into an account number ending in #0926, and as Vora shall demonstrate, **counsel has now allegedly transmitted the misrepresentation to THIS Honorable Court**. (Emphasis added).

Since PNC mentions the CFPB complaints, Vora incorporates the filing by reference with a Declaration in support that Vora did file two complaints with the CFPB[2] (See Decl. Vora and Exhibit A and B). The account number that counsel refers to in paragraph 6 of the Counter Compl. (i.e. "the last four numbers 4004") is a completely separate, totally unrelated account number as the one in dispute

---

[1] NCB is "National City Bank", the predecessor to PNC.

[2] Despite PNC's contentions that Vora referenced a "non-existent account number "0916"" (See Counter Compl. ¶ 34), Vora simply mistyped the Account # as "0916" instead of "0926" in the letter, a simple "scrivener error."

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

ending in #0926. The #4004 account actually ORIGINATED as a card ending in #1554 (See Decl. Vora, Exhibit C). The screen shot provided by PNC to the CFPB is on file with the Federal Agency. It has some personal information of Vora,[3] and is unsigned. However, what it does show is that on or around July 31, 2005, an "Original" account ending in #1554 was converted into a "Second Account" ending in #4004 (i.e., the #4004 account). The credit limit was $1,000, and it was originally a <u>secured</u> card which eventually became an <u>unsecured</u> card in July of 2005. The screen shot even makes a designation, "USER NOTES 7/05 ACCT MGMT OFFER FROM EXIST SEC 4489006577001554." (See Exhibit C).

PNC knowingly, willingly, intentionally and maliciously made false statements to the Federal Agency, by misrepresenting that Vora reported the credit card associated with the "original account ending in #4004 lost/stolen in August 25, 2006 and PNC issued a new credit card for the Account ending in #0926." This was grossly unfounded and not supported in fact. (See Decl. Vora).

Counsel was made fully aware of this discrepancy PRIOR to filing the Counter Compl. So, PNC *switched* the story (from falsely representing to the CFPB that it was reported "lost/stolen"), for another, (to falsely representing to the Court that it had "report of some irregular activity"). (See Counter Compl. ¶ 11).

The Counter Compl. is based on a fabrication that PNC cannot provide an original applicable signed agreement for #0926 (the actual disputed account) because PNC switched #4004 account into #0926 at the request of Vora, and then it was Vora, the alleged debtor, who created some type of "ruse" against PNC. No! These were TWO separate account numbers that were unrelated.

The CFPB complaints referenced in the Counter Compl. submitted to the CFPB by Vora were certified. In fact, ALL information sent to the CFPB must be certified, by BOTH parties, the person making the complaint, <u>and</u> the party

---

[3] Personal information such as social security number, birthday, mother's maiden name redacted.

answering it, just like Rule 11(b) in Federal Court.  PNC is fully aware, and presumably so is counsel, that making false statements to a Federal Agency, just like making false statements in Federal Court, is a "no-no."

The #4004 account began reporting on Experian in August of 2005.  Vora has not been provided one scintilla of evidence, only conclusory allegations, that it was "reported lost/stolen."  Indeed, when Vora pressed the issue with PNC in the second complaint filed against PNC with the CFPB, the response by PNC was that the information relating to reporting the #4004 being lost/stolen was "purged." (See Decl. Vora).  PNC was now buried in its own fabrications.  The #4004 was voluntarily CLOSED by Vora in September of 2007 as clearly evidenced by the Experian report, NOT because it was "lost/stolen." (See Decl. Vora, Exhibit D).

The #0926 account was already reporting to Experian (beginning in October of 2005) and is the item being disputed by Vora in the FCRA suit.  (See Doc 12). (See Decl. Vora).

So how is it, that PNC can justify its claim to the CFPB that Vora reported #4004 "lost or stolen" *in August of 2006*, and now, as falsely claimed by counsel, had "reports of irregular activity," thereby having it converted from an "Original Account" with numbers ending in #4004 to a "Second Account" with numbers ending in #0926, when Experian had been reporting #0926 since October of 2005, a year *earlier* than counsel claims it was created as a "Second Account!"  It is PNC, not Vora, that created the "ruse."  **PNC was either unwilling and/or unable to provide any original documents regarding the #0926 despite Vora's repeated demands,** so it mish-mashed the two account numbers, claiming that the "#4004" became "#0926" which is false.  (Emphasis added).

Unless PNC has a time-traveling machine that rivals the DeLorean used by Michael J. Fox in the classic film, "Back To The Future," **ALL of the factual allegations** in the Counter Compl. that reference the "#4004" magically becoming the "#0926" are made in bad faith, are made in violation of Rule 11(b), are made in

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1    dishonor, and quite possibly, constitutes "fraud upon the Court."

2        "The Court assumes all factual allegations in a complaint are true, but the
3    Court need not accept as true unreasonable inferences or conclusory legal
4    allegations cast in the form of factual allegations." *See* Western Mining Council v.
5    Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. 1031, 102 S.Ct. 567,
6    70 L.Ed.2d 474 (1981).

7        The Court has tremendous power to control its docket. If PNC can continue
8    its chicanery simply because they can afford to pay their attorneys' fees, then it
9    defeats **the principles of equity and justice for ALL parties**. (Emphasis added).
10   *See* Byrne v. Nezhat, 261 F.3d 1075 (11th Cir. 2001). Vora conveyed to counsel
11   the misrepresentations by PNC via e-mail, via postal mail, and via telephone on the
12   MEET AND CONFER, but counsel responded to Vora that "I can confirm that we
13   will not be able to resolve the dispute short of a motion."

14       "**Before filing a civil action**, the attorney has a duty to make an
15   investigation to ascertain that it at least has some merit, and to further ascertain that
16   damages sought appear to bear a reasonable relation to injuries actually sustained.
17   This is one of the purposes of F.R.Civ.P. 11." *See* Rhinehart v. Stauffer, 638 F.2d
18   1169, 1171 (9th Cir. 1979). (Emphasis supplied). A district court has the power to
19   dismiss a complaint if it is frivolous or if brought for some ulterior purpose. *See*
20   Brown v. District Unemployment Compensation Board, 411 F.Supp. 1001, 1001-
21   02 (D.D.C. 1975). Pursuant to the Court's broad discretion, Vora respectfully
22   requests the Court to dismiss the Counter Compl. on a finding of a violation of
23   Rule 11(b) and/or a finding of "fraud upon the Court."

## IV. Legal Standard: PNC lacks Article III standing

24

25       The jurisdiction of the Federal Courts is limited to the adjudication of "cases
26   or controversies" by Art. III § 2 of the Constitution. *See* Simon v. Eastern
27   Kentucky Welfare Rights Org., 426 U.S. 26, 37-38, 96 S.Ct. 1917, 1923, 48
28   L.Ed.2d 450 (1976).

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1    A Rule 12(b) motion to dismiss tests whether a complaint has grounds for
2    federal subject matter jurisdiction.  [F.R.Civ.P. 12(b)(1)].  If the plaintiff lacks
3    Article III standing of the U.S. Constitution, then the court lacks subject matter
4    jurisdiction, and the case must be dismissed.  *See* Steel Co. v. Citizens for a Better
5    Env't., 523 U.S. 83, 101-102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

6    To avoid such dismissal "[A] plaintiff must demonstrate standing **for each**
7    **claim** he seeks to press and "**for each form of relief** that is sought.""  *See* Maya v.
8    Centex Corp., 658 F.3d 1060, 1068-69 (9th Cir. 2011) (quoting Davis v. Fed. Elec.
9    Comm'n, 554 U.S. 724 734 (2006)).  (Emphasis supplied).  Once a party has
10   moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the
11   opposing party bears the burden of establishing the Court's jurisdiction.  *See*
12   Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

13   Moreover, a plaintiff MUST show that it has (1) suffered an injury in fact,
14   (2) that is fairly traceable to the challenged conduct of the defendant, and (3) it is
15   likely to be redressed by a favorable judicial decision.  *See* Lujan v. Defs. Of
16   Wildlife, 504 U.S. 555, 560 (1992).  "Injury" is <u>required</u> under Article III in PNC's
17   Counter Compl.  However, the jurisdictional question of standing precedes, and
18   does <u>not</u> require, analysis of the merits.  *See* Equity Lifestyle Props., Inc. v. Cnty.
19   Of San Luis Obispo, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008).

## Argument: Article III Standing

21   PNC claims in paragraph 1 of its Counter Compl., that "This Court has
22   jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331,
23   1332 and 1367. (See Doc 20, Counter Compl. ¶ 1).  However, PNC also DENIES
24   the Court has jurisdiction pursuant to 28 U.S.C. § 1331 when it filed its ANSWER
25   to the FAC (See Doc 20, ANSWER, ¶ 6).  PNC states as follows, in relevant part,
26   "PNC denies that circumstances exist to confer jurisdiction on this Court or on any
27   court as alleged in Paragraph 6."

28   Pursuant to F.R.Civ.P. 8(b)(3), "A party that intends in good faith to deny all

the allegations of a pleading – including the jurisdictional grounds – may do so by a general denial." PNC did NOT deny "all the allegations in the pleading." In fact, it filed an ANSWER admitting to many of Vora's factual allegations.

In addition to citing that the Court has subject matter jurisdiction, PNC also cites that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc 20, Counter Compl. ¶ 1). However, according to the American Bar Association, "Diversity jurisdiction" in federal court under 28 U.S.C. § 1332 exists when **two conditions are met.**[4]  (Emphasis added). First, the amount in controversy must exceed $75,000. Second, all plaintiffs must be of different citizenship than all defendants.

Here, PNC is making a speculative claim for "actual damages of $6,875.79" without an applicable signed cardholder agreement. PNC also makes a speculative claim for unspecified punitive damages. However, as Vora demonstrates herein, the "factual allegations" are based on misrepresentations to the Court in violation of Rule 11(b), that PNC appears to have committed "fraud on the Court" and thus lacks standing to claim any damages whatsoever.

Furthermore, PNC claims that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 which states, "the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action which such original jurisdiction that they form the part of the same case or controversy under Article III of the United States Constitution." PNC's Counter-Compl. "form part of the same case or controversy" as it was filed as a retaliation on Vora for the FCRA claim against PNC. PNC claims that the Court lacks subject matter jurisdiction on the FCRA claim, yet filed an answer which was not a general denial. Now PNC claims that the Court has jurisdiction, even though

---

[4] Source: https://www.americanbar.org/groups/litigation/committees/pretrial-practice-discovery/practice/2019/diversity-pleadings-requirements-under-28-usc-1332/

**MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS**

1   the cases are related.  PNC must clarify its stance on the Court's jurisdiction.

2        Even if PNC is correct and the Court finds that is has original jurisdiction,
3   diversity jurisdiction, and supplemental jurisdiction, PNC's claim of injury is not
4   concrete and particularized or actual or imminent.  Instead, it is conjectural or
5   hypothetical, thus cannot withstand a dismissal pursuant to Article III.

6        PNC has filed its Counter Compl. based on a FALSE claim that PNC
7   converted an "Original Account" number ending in #4004 in 2006 to a "Second
8   Account" ending in #0926 in order to devise a ruse to avoid having to answer to
9   Vora regarding his "demand notice" to provide Vora with such documents
10  pertaining to the account number ending in #0926 (i.e., the ORIGINAL documents
11  of the true, correct and complete signed applicable Cardholder Agreement).

12       PNC knows that Vora did NOT originate any card with PNC, and PNC also
13  knows that PNC is NOT the originator of the account number ending in #0926.
14  Indeed, PNC admits it is a "servicer of unsecured credit card accounts." (See Doc
15  12, ¶ 13).   PNC has not attached any chain of title, assignment, or purchase
16  agreement from its predecessor, NCB.  PNC even falsely claims in paragraph 56 of
17  its Counter Compl. that it "performed all its duties and obligations pursuant to the
18  terms and conditions of the Exhibit 2 PNC agreement."  (See Doc 20, Counter
19  Compl. ¶ 56).  PNC did **not** attach any agreement.  (Emphasis added).

20       Vora has not ONCE been provided with the signed original applicable
21  agreement, and PNC has no injury, and has no damages, without providing any
22  original applicable agreement.  After repeated demands by Vora to provide the
23  original applicable agreement, Vora provided NOTICE to PNC with at least three
24  offers of presentment for PNC to provide a written response by signing a document
25  titled "AFFIDAVIT: VERIFICATION OF DEBT" (See Decl. of Vora, Exhibit E).
26  PNC falsely labels the title in the Counter Compl. as "Affidavit: Validation of
27  Debt." (See Counter Compl. ¶ 34).  PNC failed to answer basic, factual questions
28  regarding the alleged account.  For example, it failed to even answer if PNC had

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

personal knowledge of the facts regarding the original credit card agreement, and whether PNC provided FULL DISCLOSURE of its terms. Through its silence by acquiescence, PNC lacked standing and failed to show it suffered ANY damages.

Despite nearly THREE years in dispute, PNC has not produced a signed applicable agreement, nor has it attached or presented any other writings with Vora's signature assenting or consenting to ANY terms and conditions of an agreement. Instead, PNC states damages in conclusory form. For example, PNC conclusory alleges that "demand for payment has been made." (Counter Compl. ¶ 59). PNC has not specified its actual "injury in fact" as to damages.

As PNC already is fully aware, that there were NO monthly statements sent to Vora once he denied he owed a debt, disputed the same, and DEMANDED strict proof thereof, by demanding the signed, applicable true and correct certified copy of the ORIGINAL AGREEMENT. PNC has NOT sent Vora any letters with "demand for payment" for the amount it claims in its current Counter Compl.

On the basis that PNC lacks Article III standing, either due to the Court lacking subject matter jurisdiction, or due to PNC's failure to incur damages, Vora requests that the Counter Compl. be dismissed in its entirety, with prejudice.

## V. Legal Standard: Failure to State a Claim

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). A court is not required to credit conclusions cast as factual allegations, unwarranted deductions of fact, or unreasonable influences. *See* Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim is **context-specific**, requiring the reviewing court to draw on its experience and common sense." Id. At 1950. (Emphasis supplied).

Dismissal under 12(b)(6) may be based on either a "lack of cognizable legal theory" or on the "absence of sufficient facts alleged under a cognizable legal theory." *See* Balistreri v. Pacific Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail **but whether claimant is entitled to offer evidence to support the claims asserted**. *See* Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997). (Emphasis supplied).

### Argument: Breach Of Contract

In citing its first Counter Claim, "Breach Of Contract," it is customary for a plaintiff to provide that there was an agreement with a defendant by introducing into evidence a written agreement which is SIGNED. PNC did no such thing. (See Counter Compl. ¶ 55). PNC also in conclusory fashion and in a thematic recitation of the elements, states that "PNC has performed all its duties and obligations pursuant to the terms and conditions of the Exhibit 2 PNC Agreement." (See Counter Compl. ¶ 56). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. *See* In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Once again, PNC did not attach any such alleged "PNC agreement." PNC provided to Vora and the CFPB generic, unsigned agreements. Vora DENIES he was ever provided with the actual terms and conditions of any applicable alleged agreement. PNC knows this, and thus PNC's claim for "breach of contract" is made in bad faith, is dilatory, which serves only the purpose of prejudicing Vora.

To recover damages for a written breach of contract, the moving party must prove ALL of the following: (1) that a plaintiff and defendant entered into a valid contract; (2) that a plaintiff did perform or was excused for non-performance; (3) the defendant's breach of contract; and (4) **resulting damages**. (Emphasis added).

PNC has failed to produce, according to many courts, the ACTUAL terms and conditions of the alleged agreement with the user's actual signature as proof of

**MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS**

the agreement. PNC has failed to show that Vora is liable for the alleged debt, or that PNC incurred damages. Before PNC can even make a claim for relief, there first must be a valid applicable, true, correct and complete original cardholder agreement evincing ALL terms and conditions with full disclosure. Again, PNC provided no such document.

Time and time again, financial institutions, collection agencies, and any other persons attempting to collect an alleged debt resort to providing generic, unsigned cardmember agreements in collection suits. *See* Henggeler v. Brambaugh & Quandahl P.C. LLO, 894. F.Supp.2d 1180, 1187 (D.Neb. 2012) (denying a motion to compel arbitration because a debt buyer failed to demonstrate that a "valid agreement to arbitrate exists" **and submitted only a generic cardmember agreement from Chase that was "unsigned"**). (Emphasis supplied).

When Vora submitted a complaint to the CFPB for the failure by PNC to provide an ORIGINAL applicable signed Cardholder Agreement, PNC responded to the complaint by sending the CFPB the following: (1) a generic, unsigned, non-notarized, partial National City Bank agreement which had NO copyright date, and thus could NOT have been the "applicable" original agreement. (2) PNC sent the CFPB also a generic, unsigned, non-notarized, boilerplate PNC Cardholder Agreement copyright 2013, of which the first page stated, quoted verbatim, **"Examples in this agreement are for illustration purposes only and are not contract terms."** (Emphasis added). (See Decl. Vora).

The CFPB has made it abundantly clear on its website, consumerfinance.gov of the following: "If you are looking for information specific to your account, contact the bank or institution that issued your card. By law, the issuer <u>must</u> make your agreement available to you upon request. If you are having trouble getting your agreement, let us know by submitting a complaint."[5] The CFPB site also

---

[5] Source: https://www.consumerfinance.gov/credit-cards/agreements/

indicates that the agreements stored in its database have general terms and conditions, pricing, and fee information. **They are not specific** to an individual's account information. (Emphasis added). Indeed, Vora submitted not one but TWO separate complaints, yet PNC failed to provide the applicable, specific original agreement, and has concocted a story to mish-mash *two* separate and unrelated account numbers by way of deception, claiming that an "Original Account" turned into a "Second Account" as a feeble excuse to avoid having to furnish the original, alleged signed applicable agreement.

Since May of 2017, the CFPB, according to its own publicly available database, has logged 4,763 complaints against PNC for various allegations of consumer financial protection laws. The CFPB does not act on behalf of any individual consumer, and its mandate specifically prohibits it from doing so. Knowing that the CFPB is barred from acting on behalf of consumers individually, PNC is fully aware that a consumer such as Vora must either accept whatever agreement PNC provides to the CFPB, even if it is without merit, or to eventually proceed through litigation. Vora received an e-mail from the CFPB after Vora provided feedback regarding the SECOND complaint filed by Vora. That complaint is published on the consumer complaint forum, and was sent to "FTC and other law enforcement agencies." (See Decl. Vora).

By now, PNC should be intimately familiar with the <u>Wheeler</u> allegations and class action, which was settled. Vora provided the <u>Wheeler</u> case to both the PNC executive office, its chief counsel, and in the Complaint filed with the CFPB. *See* <u>Wheeler v. Capital One Bank (USA) N.A. et al.</u>, 2:12-cv-05848 (E.D. Penn., 2012). Counsel for <u>Wheeler</u>, Stuart A. Eisenberg from Warminister, PA, has brought suit against various financial institutions for their incessant refusal to provide the ORIGINAL signed applications and agreements in collection suits even when it is clearly brought to their attention on demand.

Some examples from <u>Wheeler</u> are as follows: "Thus, the use of false

contracts is knowing, intentional and conspiratorial, and a fraud." (Wheeler, Compl. at ¶ 56). "These admissions basically affirm that there is an arbitrary assignment or delegation of Customer Agreements to collection cases based NOT on the date of issuance of the respected credit card, but dated AFTER the credit card date of issuance." (Wheeler, Compl. at ¶ 58).

"Clearly, the attached agreement is false and is not applicable to the account of plaintiff without specific authority for the purported new Customer Agreement, which again, does not purport to be a modification or amendment." (Wheeler, Compl. at ¶ 61). "These wrongful collection activities are intended by the Defendants to secure collection from those whom the United States Congress has defined as the "least sophisticated consumer." (Wheeler, Compl. at ¶ 62). See also Thomas v. American Express Bank, FSB, 139 So.3d 809 (AL Civil App. 2013). (Rejecting the "breach of contract" claim by American Express for three cards allegedly used by Thomas, absent the presence of the applicable signed cardmember agreements, and reversing in favor of Thomas on appeal).

PNC did not attach either of the two alleged agreement(s) to its Counter Compl. that it previously sent to Vora (and the CFPB), which Vora DENIED were authentic or applicable, yet PNC states, in conclusory form, a "breach of contract" claim. Clearly, it is absolute that Customer Agreements upon which all issued credit cards are based, regardless of any alleged subsequent amendments, modifications, or the like, are those issued when the card is issued, and without that original signed agreement, subsequent agreements do NOT correlate in any manner. PNC provided Vora an UNSIGNED and non-copyrighted partial National City agreement, falsely claiming it was "the original agreement." (See Decl. Vora).

Pursuant to CAL Penal Code Sec 132: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

altered or ante-dated, is guilty of a felony.  A quick "Google" search for "examples of violations of the CAL Penal Code Sec 132" pulls up THIS result: **"Handing a lawyer a false contract that will be used as evidence in trial."**[6] (Emphasis added).

Vora respectfully requests the Court to consider the oral arguments in the Carlos[7] case from the Ninth Circuit, addressing the issue of what actually constitutes a **signed** Cardholder Agreement.  (Emphasis added).

Some excerpts from questions by the Court to defense counsel regarding the applicability of an alleged contract terms in a Capital One Cardholder Agreement were quite inquisitive, and are referenced from Carlos, cited as follows:

16:15: Court: "Where is the written contract?  "What makes up the written contract?"

16:30: Court: "You say it was a written contract.  Show me how it's a written contract?

17:09: Court: "Let's just get down to the heart of it.  Which is the document that has his signature that incorporates all of the other obligations of the contract?  Just show me where that is."

18:40: Court: "What is the contract? That's all we're trying to figure out, ok."

19:34: Court: "Wait a minute, before you go on, that's based on what? That's based upon the assumption that there's a written or oral contract?"

21:06: Court: "But let's just...let's get the documents."

25:15: Court: "How do you know that activating the card means I agree to the Cardholder Agreement?"

---

[6] Source: https://www.shouselaw.com/ca/defense/penal-code/132

[7] Carlos v. Patenaude & Felix, A.P.C. Case Number 15-35896 (9th Cir. 2018)
Source: https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000013681

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

26:54: Court: "So when he received the card and it had additional agreement in the packet. Does that agreement say that when you authenticate, when you activate the card, that means you are agreeing to everything in the agreement?"

Vora was hopeful to discuss these issues with opposing counsel in the MEET AND CONFER, but PNC had apparently already made up its mind that it wanted to continue litigation. PNC has not provided any signed applicable agreement to Vora despite his demands, and despite filing two complaints with the CFPB. PNC fails to state a claim for which relief can be granted by not producing any signed applicable agreement in its Counter Compl. Thus, Vora respectfully requests the Court to dismiss with prejudice the "Breach of Contract" claim.

## Argument: Open Book

In citing its second counter claim, "Open Book," PNC alleges in conclusory fashion that there was the "sum of $6,875.79 for a balance due on a book account for goods sold and delivered and/or services rendered to Plaintiff." (Counter Compl. ¶ 59). First of all, PNC knows these are provided directly by the merchants, not PNC. Furthermore, PNC misrepresents in conclusory fashion that "no part of said sum has been paid, although demand for payment has been made." This is absurd. PNC did NOT send, and Vora did NOT receive from PNC any "demand" to pay the alleged balance for the sum that PNC is claiming is now allegedly owed prior to this Counter Claim. In fact, after Vora DENIED the alleged debt upon providing NOTICE to CEO Demchak that PNC had failed to provide the original, true, correct and complete certified copy of the cardholder agreement, PNC itself did not ONCE send "demand for payment" **demanding the full balance alleged in the Counter Compl.** (Emphasis added).

Vora highly doubts that PNC refrained from sending prior demand for the alleged full balance on an "open book" simply because it was playing "nice-nice" with Vora. PNC, as a *servicer of the unsecured account*, did not originate the alleged account number ending in #0926. PNC lacked standing to send a statement

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1    to Vora demanding full payment for an alleged outstanding debt, PNC lacked

2    standing to claim an "open book" without having an original applicable signed

3    agreement, and PNC lacked standing after failing to provide a written response to

4    Vora's repeated written requests inquiring about **specific terms and conditions** of

5    the account number ending in #0926. (Emphasis added).

6         The concept of an "open book" is an unpaid or <u>unsettled</u> account.  Vora

7    stated in writing to CEO Demchak in May of 2017 that the alleged debt "was

8    legally and financially settled" and after which there were NO ongoing

9    transactions.  There was NO balance owed, due and struck between the parties

10   (i.e., between Vora and PNC care of CEO Demchak or any of his agents), except

11   for a ZERO, $0.00 balance.  There was no demand in writing by either CEO

12   Demchak or any of his agents that the "book" was "open" and with an <u>agreement</u>

13   by BOTH parties of the alleged amount in the Counter Compl. was "owed or due."

14        Indeed, when Vora filed a complaint against PNC with the CFPB in

15   December of 2017, PNC sent the CFPB an ante-dated PNC statement from 2015,

16   <u>certifying</u> to the CFPB that it was providing "the most recent statement for the

17   account."  **The balance shown for the account number ending in 0926 was**

18   **ZERO**.  (Emphasis added).  PNC could not show the CFPB any balance but $0.00.

19        This is in writing, this is on file with the Federal Agency, and this is

20   contradictory to the factual allegations made in the Counter Compl. of any

21   "balance" being "due and owing" or "unpaid" on an "open book."

22        PNC understood that once it failed to provide Vora with the original alleged

23   documents pertaining to the #0926 account number, it was CLOSED. "A closed

24   account is...one to which no further additions can be made on either side...Thus, it

25   is clear that the 'open' or 'closed' nature of a book account turns not on the

26   account balance per se, but on the parties' expectations of possible future

27   transactions between them [on that account]." *See* <u>R.N.C. Inc. v. Tsegeletos</u>

28   (1991) 221 Cal. App. 3d 967.  PNC, however, through its continued ruse, kept

1 | adding interest and fees to what it furnished in the consumer report, when it lacked
2 | standing to do so, absent the presence of the applicable signed agreement.

3 |     Vora need not consider any correspondence from PNC that contains
4 | conclusory statements such as "we provided you proof of the debt's validity."
5 | Such a formulaic recitation of the elements was repeatedly rejected by Vora in its
6 | voluminous correspondence with PNC long before this Counter Claim was filed.
7 | These formulaic recitations are repeated throughout the Counter Compl., and Vora
8 | requests the Court to treat them as unwarranted inferences, and dismiss the claim.

9 |     Indeed, Vora requested via certified mail that either CEO Demchak or his
10 | agent(s) with personal knowledge of the facts provide him with a response in
11 | writing regarding the actual account ledgers and bookkeeping entries for the
12 | account number ending in 0926.  PNC **failed** to respond, despite at least three
13 | offers of presentment. (Emphasis added). (See Decl. Vora).

14 |     PNC's allegations do not seem to rise to the level of plausibility, and thus
15 | PNC fails to state a claim for which relief can be granted on an "open book" claim.

### Argument: Account Stated

17 |     In PNC's citing of an "Account Stated," PNC alleges, in conclusory fashion,
18 | that "pursuant to the terms of the subject contract..."  (Counter Compl. ¶ 61).
19 | Subject contract?  What contract?  The elements of an account stated must have all
20 | of the following: (1) previous transactions between the parties establishing the
21 | relationship between "debtor" and "creditor"; (2) an agreement between the
22 | parties, on the amount due, between "debtor" and "creditor"; (3) a promise by the
23 | "debtor" to pay the amount due.  If any one of these is lacking, then there is no
24 | claim of "account stated."

25 |     In the "account stated," the person attempting to collect makes a claim that
26 | the alleged "debtor" failed to object to the final statement within a reasonable
27 | amount of time, and thus implies that the "account stated" is correct as rendered.
28 | Of course, the alleged "debtor" can always challenge the "account stated" and deny

1    the claim, and demand the applicable ORIGINAL signed cardholder agreement.

2         However, no such "final statement" was alleged in the Counter Compl.

3    showing the balance due and demanding "payment in full."  NO such allegation

4    was made in the Counter Compl. regarding any "final statement" because none

5    such statement was sent to Vora.  Indeed, Vora DENIED the "account stated" via

6    written NOTICE to PNC, denying the alleged balance due in its entirety in May of

7    2017, after spending several weeks investigating PNC in April of 2017 for its

8    deceptive business practices, and after attempting to obtain the original alleged

9    signed application/agreement for the account number ending in 0926.

10        Vora did not have an "agreement between the parties" on the "amount due."

11   Vora made a conditional offer of acceptance upon proof of claim in April 2017 for

12   PNC to provide the original agreement, after which there was no "promise to pay"

13   between Vora and PNC once CEO Demchak was placed "ON NOTICE" in May of

14   2017 that PNC had failed to provide the original applicable signed agreement.

15        For a claim to rise above the level of speculation and survive a 12(b)(6),

16   PNC **must** show, not simply state, that there was a "promise to pay" on account

17   stated.  Otherwise, there can be no "account stated." (Emphasis added).

18        Vora did not admit, assent, consent or agree to any balance due **except for a**

19   **$0.00 balance**, well before any alleged "charge-off." (Emphasis added).

20        Proceeding with this Counter Compl. would cause undue delay on the FCRA

21   claim filed by Vora regarding the unverified information appearing on Vora's

22   Experian report.  PNC has already shown bad faith in its correspondence with

23   Vora.  In accepting the "account stated" claim, the Court would have to entertain a

24   merry-go-round of more formulaic recitation of the elements by PNC, which

25   would severely prejudice Vora.

26        The "account stated" is mere conclusory, and would NOT lead to discovery

27   of admissible evidence of an **agreement by the parties** for the amount alleged in

28   the Counter Compl., and thus, PNC fails to state a claim for which relief can be

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1   granted, thus warranting dismissal. (Emphasis added).

## Argument: Fraud

3   In citing PNC's fourth and final counterclaim, "fraud," Rule 9(b) states: "In alleging fraud or mistake, the party must state with particularity the circumstances constituting the fraud or mistake. More specifically, the complaint must allege the "who, what, when, where and how" of the fraud. *See* TransFresh Corp. v. Ganzerla & Assoc. Inc., 862 F.Supp. 2d 1009, 1017 (N.D. Cal. 2012).

8   Indeed, for claims involving allegations of fraud, the complaint must also satisfy "the heightened pleading requirement of Rule 9(b)." *See* Davidson v. Kimberley-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018).

11   To prove elements of a fraud claim, there must be ALL of the following: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) **resulting damage**. (Emphasis added).

15   In stating its "fraud" claim, PNC once again rests on its own fabricated story of a "PNC Agreement on the Second Account." (Counter Compl. ¶ 63, 64, 65). PNC may not allege fraud, when it was PNC itself, NOT Vora, that made a fabricated claim of the account number ending in #4004 was converted into the account number ending in #0926.

20   PNC's claim of "fraud" is nonsensical, baseless, contradictory, and may once again constitute a violation of F.R.Civ.P. 11(b). Consider, for example, paragraph 66 in the Counter Compl. "As part of the ruse, Plaintiff eventually begin to deny there was an account and to demand PNC stop reporting to the CRAs as though an account existed." "Plaintiff made these demands despite knowing that there was no justified basis in doing so."

26   Once again, it appears that PNC is making conclusory allegations that are not supported either in fact or in law, and is confusing the word "account" and "debt." Vora has not once denied the existence **of an account number** ending in

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

#0926. (Emphasis added). Vora denied the alleged DEBT regarding an account number ending in #0926. It is PNC, not Vora, who engaged in a false representation, by making unwarranted allegations that cannot even rise from a level of conceivable to plausible, and thus, according to Vora, fail to meet the plausibility standards of Iqbal. It is PNC, not Vora, who has engaged in concealment or nondisclosure, ignoring Vora's REPEATED REQUESTS to provide a written response and VERIFY the alleged debt. The word "verification" is (1) evidence that establishes or confirms the truth of something."; (2) a formal assertion of the truth of something, as by oath or affidavit." *See Random House Unabridged Dictionary* 2113 (2nd Ed. 1993). *See also Black's Law*, 10th ed., pg. 1793, definition of "verify."

This is not the first time a consumer has demanded that a bank VERIFY the alleged unsecured debt. *See* Kozlowski v. Bank of America, N.A. et al., 1:18-cv-0013-DAD-EPG (E.D. Cal. 2018) ("said notices included demand that the claim of debt was valid, free from any claims and defects, whether there was a breach of agreement, whether there was failure of consideration or material alterations, whether the alleged account was transferred, and that the original lender provided value. Also, the demand included a request for a complete statement of damages and losses incurred by BANA."). (Kozlowski, SAC, pg. 9). *See also* Lee v. American Express Bank, et. al. 8:13-cv-01131-BRO-SH (C.D. Cal. 2013).

PNC fails to meet the heightened pleading standard to state a claim for fraud, when it was PNC *that created the ruse on Vora*, by having Vora rely on the misrepresentations by PNC regarding the reasons why it could not provide the original agreement for account number ending in #0926. PNC lacks standing, and fails to state a claim for which relief can be granted on its "fraud" claim. PNC created the story of #4004 converting into #0926. When it was "busted" for saying "#4004 was reported lost/stolen" it changed its story. If PNC wants to see exactly who did the "fraud," its agents only need to look in the mirror.

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

# VI. **Conclusion**

PNC has engaged in a false, deceptive, and manipulative scheme, to Vora, to the CFPB, and now, to THIS Honorable Court, in engaging in its continued pattern of operating by way of deception, by filing is Counter Compl. in attempts to collect a **non-existent** alleged debt knowing that is has FAILED repeatedly to provide the alleged applicable signed agreement for the account number ending in #0926.

PNC has come to Court is dishonor regarding its Counter Compl. as explained throughout this motion, and thus warranting a dismissal with prejudice. "Leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party acted in bad faith." *See* Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

PNC acted in bad faith by creating its own false narrative regarding why it did not produce the original, true correct and complete certified copy of the signed applicable agreement.  Vora would be prejudiced by continuing to litigate the Counter Compl.  If PNC failed to provide the signed applicable agreement in three years, then it is unlikely to provide it now.  If PNC, as *servicer*, lacked standing, failed to prove that it *owns* an alleged debt, failed to prove that Vora *owes* an alleged debt, and failed to prove damages, despite having nearly three years to do so, then it is only going to keep repeating its mere conclusory allegations of "debt."

Further litigation will cause undue delay, and if PNC is allowed to continue with its false narrative regarding the "switching" of account numbers, it would simply be futile.  A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *See* Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008).  A plaintiff can also plead himself out of court if he pleads facts that preclude relief.  *See* Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007).  For the sake of equity and justice, Vora requests the Honorable Court to not allow PNC to further its false narratives.

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1    WHEREFORE, based on the foregoing, and based on the NOTICE OF
2  MOTION, the Exhibit in the NOTICE, the supporting Declaration and Exhibits,
3  Vora respectfully requests the Honorable Court to GRANT his MOTION TO
4  DISMISS with prejudice regarding the Counter Compl., and each cause of action
5  therein, given its broad powers pursuant to F.R.Civ.P. 11(b) or through a finding
6  that Vora has met the criteria to warrant dismissal pursuant to F.R.Civ.P. 12(b).
7  Vora respectfully also requests an ORDER from the Court regarding same,
8  pursuant to F.R.Civ.P. 7(b)(1)(A)-(C).

9

10

11    Respectfully submitted on this day of ___ May 21, 2020

12

13                              By: Pritish Vora, Pro Se

14

15                              _____

16                              Pritish Vora
17                              27758 Santa Marg. Pkwy, #530
                                Mission Viejo, CA  92691
18                              (949) 292-8359
19                              pvora2112@gmail.com

20

21

22

23

24

25

26

27

28

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

1

**CERTIFICATE OF SERVICE**

2  I certify that I mailed the foregoing document to the Clerk of the Court via USPS

3  Priority Mail with tracking on May 21, 2020, and a copy via United States Postal

4  Service first class postage prepaid was mailed to the party below:

5

6  Cathy L. Granger, (CA Bar # 156453)

7  Wolfe &Wyman LLP

8  2301 Dupont Drive

9  Suite 300

10  Irvine, CA  92612

11  (949) 475-9200

12  clgranger@ww.law

13

14

15

16  _____

17  Pritish Vora, Plaintiff, Pro Se

18  27758 Santa Marg. Pkwy, #530

19  Mission Viejo, CA  92691

20  949-292-8359

21  pvora2112@gmail.com

22

23

24

25

26

27

28

MEMORANDDUM IN SUPPORT OF MOTION TO DISMISS

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
POSTAGE REQUIRED

**PRIORITY**

UNITED STATES
POSTAL SERVICE.

Retail

US POSTAGE PAID

**$7.75**

Origin: 92690
05/21/20
0568460560-11

PRIORITY MAIL 1-DAY ®

1 Lb 2.10 Oz

1006

CTED DELIVERY DAY: 05/22/20

C032

55 E TEMPLE ST
OS ANGELES CA 90012-3332

USPS TRACKING®NUMBER



9505 5163 3488 0142 6219 66

FROM: **PRIORITY** ★ MAIL ★

UNITED STATES
POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

Pritish Vora
27758 Santa Mag. Pkwy
#530
Mission Viejo, CA 92691

DOC



TO:

Clerk of The Court
255 E. Temple St.
Suite TS-134
Los Angeles, CA
           90012-3332



RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 26 2020

NTRAL DISTRICT OF CALIFORNIA
UTHERN DIVISION   BY DEPUTY

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

ging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.